234 So.2d 250 (1970)
John J. CASWELL
v.
RESERVE NATIONAL INSURANCE COMPANY.
No. 3898.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1970.
Rehearing Denied May 4, 1970.
Writ Refused June 26, 1970.
*251 Thomas Barr, III, New Orleans, for plaintiff-appellant.
Robert A. Vosbein, New Orleans, for defendant-appellee.
Before BARNETTE, LE SUEUR and DOMENGEAUX, JJ.
BARNETTE, Judge.
The plaintiff, John J. Caswell, a policyholder of defendant, Reserve National Insurance Company, brought suit seeking recovery of damages. The issues forming the basis of his suit arise out of the company's refusal to continue his policy of health and accident insurance except on the condition of an exclusion rider, which excluded future benefits for any disease or disorder of the heart and circulatory system. The plaintiff is contesting the right of the company to impose the exclusions *252 of the rider as a condition for renewal of the policy.
In addition to his personal demands, plaintiff seeks to bring a class action for and on behalf of all policyholders who may be similarly situated. An exception of no right and of no cause of action insofar as the suit purports to be a class action was maintained and to that extent the suit was dismissed. The judgment also maintained defendant's objection to certain interrogatories propounded by plaintiff and relieved defendant from answering. Defendant's exception of no cause of action seeking dismissal of plaintiff's suit in his personal capacity was overruled. The plaintiff has appealed.
The principal issue on this appeal is the right of plaintiff to bring a class action on behalf of all policyholders. The question relative to defendant's objection to the interrogatories is secondary in that they relate only to the purported class action.
Plaintiff's suit insofar as his personal claims are concerned is still before the trial court, therefore, we will not discuss the issues and will limit our statement of the case to such facts as are relevant to the issue of the class action.
The plaintiff was issued a health and accident insurance policy in 1960 by American Physicians Insurance Company of Baton Rouge. Thereafter, the Reserve National Insurance Company of Oklahoma City, Oklahoma, assumed all the policy contracts of the original company and thus became obligated to plaintiff Caswell as fully as if it had been the original insurer.
Caswell was paid certain benefits on account of a heart attack. Prior to the anniversary and renewal date, February 22, 1966, defendant served notice on Caswell that it was exercising its option not to renew the policy except on the condition of the inclusion of a rider excluding liability for future disease of the heart or circulatory system. Its right of option is contained in the following words of the policy: "This policy is renewable at the option of the Insured and the Company."
LSA-R.S. 22:212, relating to health and accident insurance, provides in pertinent part:
"No such policy or contract shall be delivered or issued for delivery on risks in this state unless:
* * * * * *
(8) In any case where the policy is subject to cancellation or renewal at the option of the insurer, there shall be prominently printed on the first page of such policy a statement so informing the policyholder."
The plaintiff has alleged the defendant's failure to comply with this provision of the law and therefore has no right of option and must renew his policy on its original terms and conditions. Its refusal to do so is the basis of plaintiff's suit for damages.
Plaintiff's allegations upon which he seeks to make this a class action are contained in articles 24 through 27 of his petition. These are the articles to which defendant's exception of no right and of no cause of action is directed. They contain the following substance: that there are "undoubtedly" many other policyholders similarly situated and that defendant has probably exercised unlawfully its purported option against some or all of them either by canceling or renewing with exclusions, and that they therefore have a common interest and form a class of which he is representative. Interrogatories propounded to defendant seek discovery of all such policyholders and particularly all who have been denied renewal or have been required to accept renewal with exclusions or in any manner changing the coverage or liability of the company.
Prior to the effective date of the Louisiana Code of Civil Procedure, January 1, 1961, there was no statutory provision for class action in our procedure, although there were cases in which the effectiveness *253 of such procedure was recognized and the principle of the action applied.[1] Class actions as prescribed in Rule 23 of Federal Rules of Civil Procedure are now provided for in articles 591 and 592 of the Louisiana Code of Civil Procedure as follows:
Art. 591:
"A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right."
Art. 592:
"One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members."
Because of this relatively recent inclusion of the class action in our procedural law, the principal source of jurisprudential authority available to us is in Federal Court cases.
In our research of the jurisprudence of Louisiana we have found only four cases dealing with the issue of class action under LSA-C.C.P. arts. 591 and 592. They are, in chronological order: Vizier v. Howard, 165 So.2d 655 (La.App. 1st Cir. 1964). The court rejected an attempt by owners of five tracts of land to bring their suit as a class action on behalf of themselves and 30 other tract owners in a block of leases which had been "communized" for oil and gas development. The court ordered an amendment to join the other 30 parties in the suit within a fixed time. Instead, however, plaintiffs amended and asserted their right to bring the suit as a class action. They asserted certain claims which were alleged to be common to all the tract owners, who, they alleged, with themselves formed a class and of whom they were representative. The court there reviewed a number of cases in the Federal jurisprudence, all of which are equally pertinent to the issue presented here. The court found that the petition did not show the common interest required and observed that there might even have been a conflict of interest among some of the parties. Furthermore, there was apparently no reason why the 30 other tract owners could not have been joined as necessary parties to the suit as the trial court ordered. The court held that the order to so amend could not be circumvented by an amendment to convert into a class action.
Buras v. Orleans Parish Democratic Executive Comm., 248 La. 203, 177 So.2d 576 (1965). The opinion merely mentions that the two suits (there were two cases consolidated) were brought by the two individual *254 plaintiffs, each on his own behalf and as a class action. The issue in the cases was the constitutionality of certain election laws. There is no discussion of the so-called class action feature of the cases, hence no jurisprudential rules or guidelines relative to class actions are given.
Verdin v. Thomas, 191 So.2d 646 (La. App. 1st Cir. 1966). In this case 59 named plaintiffs claiming to be heirs of certain decedents brought a petitory action seeking to establish ownership through their common ancestors of certain interests in real property. They brought the suit as a class action in behalf of all the heirs, numbering between 270 and 500, living in several different places. The court, in maintaining the right to proceed as a class action, said in pertinent part:
"* * * There is a unity of interest between these named parties plaintiffs and the remaining portion of the Billiot heirs in a suit against the named defendants who, through various conventional conveyances and a tax sale, claim ownership of the subject land, which the Billiot heirs also claim. The plaintiffs in this action are clearly trying to establish ownership in the entire Billiot group. * * * While there is a diversity of interest in that the heirs have granted different mineral leases, we feel that there was a common interest in the Billiot heirs on one hand as against the named defendants who were sued in this class action. Their common interest in claiming the ownership of the subject property is a sufficient basis for the institution of this class action." 191 So.2d at 651.
State ex rel. Trice v. Barnett, 194 So. 2d 452 (La.App. 1st. Cir. 1966). The plaintiff brought suit on his own behalf and that of his minor son against certain authorities at Louisiana State University to enjoin them from enforcing certain regulations relative to the use of automobiles on campus by students of the University and to prohibit the imposition of fines for certain alleged violations. He alleged that other students had also been subjected to the regulations and had suffered similar injustices to those of which he complained and sought to represent them as a class. He propounded interrogatories seeking to establish the identity of the other students and the specific impositions to which they had been unjustly subjected. The court said:
"* * * This court feels that this would not be a proper class action since there is no community of interest between plaintiff and students of the university. Article 591 of the Code of Civil Procedure provides that a class action may only be instituted when the character of the right sought to be enforced by the members of the class is common to all the members of the class. Even though the pleadings may assert a class action, if the individual question is dominant, while the common question is subservient, the court is free to strike the reference to the representation of absent persons from the pleadings. See Federal Practice and Procedure, Barron and Holtzoff, Volume 2, Section 562, page 265.
"Furthermore, LSA-C.C.P. Article 592 provides that `One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.' While there is no set percentage who must join as plaintiffs, to assure adequate representation, it is pertinent to consider whether other members of the class have notice of the pendency of the action and its representative character, whether they desire or acquiesce in the representation, and whether the number of parties is sufficient as compared to the numerical size of the class. Pelelas v. Caterpillar Tractor Co. (7 Cir., 1940), 113 F.2d 629, Knowles v. War Damage Corp. (1948) 83 U.S.App.D.C. 388, 171 F.2d 15, and Waybright v. Columbian Mutual Life Insurance Co. (D.C., 1939) 30 F.Supp. 885. We do not believe that plaintiff, appearing in proper person, can insure the adequate repersentation of all the members *255 of so large a class. While there is no set percentage, we do not feel that a ratio of 1 to 7500 is adequate representation." 194 So.2d at 454.
There are a number of pertinent Federal cases and other authorities cited in the opinions in the foregoing cases which discuss the application of Federal Rule 23, which, as stated above, is the source authority of LSA-C.C.P. arts. 591 and 592. However, in adopting the Federal Rule, the redactors of the Louisiana Code of Civil Procedure were careful to point out in their official "Comments" that only the "true class action" is intended to be provided for. Many of the Federal cases which we have read deal with the hybrid and spurious class actions and, except to the extent that they are helpful in making the distinction from the true class action, they are not relevant to a decision in this case. We must therefore determine if the attempted class action in this case can meet the test of a true class action.
In the "Comments" under LSA-C.C.P. art. 591 is the following:
"(c) Under federal practice Fed.Rule 23 covers three separate and distinct types of class actions: the true class action, the hybrid class action, and the spurious class action.
In the true class action, if the representation of the members of the class is adequate, the judgment concludes not only the representatives parties, but all other members of the class who are not joined as parties. In strict theory the judgment in the hybrid class action concludes only the representative parties and persons who subsequently join in the action, but, as a practical matter, since there is a disposition of the property involved under the judgment, the latter may be prejudicial to those members of the class who do not join in the action. In the spurious class action, only the parties who actually join in the action are concluded by the judgment, and their rights would not be affected by their failure to join. `It is an invitation and not a command performance.' 3 Moore's Federal Practice (2d ed.) 3443 (1948).
Both the hybrid and the spurious class actions are permissive joinder devices which are badly needed in federal practice where the jurisdiction of the court often depends upon diversity of citizenship. * * *
There is no need for either the hybrid or the spurious class action in Louisiana, and therefore this Code provides for only the true class action.
(d) The liberality of cumulation of actions and of intervention accomplish the same purposes of the spurious class action directly and much more simply. * * *
(e) The primary need, in federal practice, of the hybrid class action is the creditors' bill for the appointment of a receiver. 3 Moore's Federal Practice (2d ed.) 3439 (1948). There is no corresponding need in Louisiana, since our receivership act expressly provides that a single creditor or shareholder may sue to provoke the appointment of a receiver. R.S. 12:752.
The second need therefor in federal practice is the equitable bill of peace with multiple parties, i. e., where many persons are asserting claims to property held by a stakeholder. The concursus procedure of Louisiana is broad enough to provide the necessary remedy in such a case. See Arts. 4651 through 4662, infra."
A distinguishing feature is that in a "true" class action the claims are "joint" or "common" whereas in a "hybrid" or "spurious" class action the claims are "several". See Barron and Holtzoff, Federal Practice and Procedure, verbo, Rule 23, Class Actions § 562.
The true class action is one in which except for the use of the class action *256 the joinder of all interested parties would be necessary for the enforcement of the joint or common right. The use of the class action is sanctioned when the persons in the class having the joint or common right are so numerous that joinder is impracticable if not impossible. The abovecited case of Verdin v. Thomas is a good example of a proper use of the class action under our law. The descendants of common ancestors obviously had a joint and common interest in establishing the title of their common ancestor from whom their respective interests in the property derived. They were so numerous as to make joinder as necessary parties utterly impracticable, if not impossible. The judgment was conclusive as to all and res judicata would bar any further litigation of the common right.
In Vizier v. Howard, supra, aside from the fact that there might have been a conflict of interest among the thirty-odd tract owners, their identities were known or could have been determined from public records and the number was not so great as to make their joinder as necessary parties, as the court ordered, impracticable. The rejection of the attempted class action appears to have been proper.
In State ex rel. Trice v. Barnett, supra, the rejection of the attempted class action appears to have been based on two points: (1) want of "common" interest, and (2) inadequacy of representation. Either point would have been sufficient basis for denying the action. The "7000" other university students actually or potentially interested in the issue had a common interest only in the question of law involved. There could have been no conclusive adjudication of their individual and "several" interests by a judgment concluding the issues which were personal, and "several" as to relator, Trice. This case, we think, is a good illustration of the "suprious" class action. The action by Trice could have been joined by any number of other students interested in the common question of law, although the factual differences might have been as numerous as the parties joining. This was a permissive right, an invitation to all interested fellow students to join in the attack on the University's campus traffic regulations. 3B Moore's Federal Practice, Second Edition, 23-2601. In such situations the adjudication of the common issue of law would not conclude similar rights of those not joined, though they might benefit from the judicial precedent or the rule of stare decisis.
There is no fixed rule by which the "adequacy" of representation can be determined. It is a question of fact to be determined by the court in each case. Weeks v. Bareco Oil Co., 7th Cir., 125 F. 2d 84 (1941); Pelelas v. Caterpillar Tractor Co., 7th Cir., 113 F.2d 629 (1940); Clark v. Thompson, D.C., 206 F.Supp. 539 (1962); Flaherty v. McDonald, D.C., 178 F.Supp. 544 (1959).
In Federal practice the more recent cases closely scrutinize this question of adequacy of representation because of the conclusiveness of the action upon all members of the class. Issues determined in a true class action are res judicata so far as any member of the class is concerned, even though he neither joined in nor heard of the litigation. Kainz v. Anheuser-Busch, Inc., 7th Cir., 194 F.2d 737 (1952); Knowles v. War Damage Corporation, 83 U.S.App. D.C. 388, 171 F.2d 15 (1948); Pentland v. Dravo Corporation, 3d Cir., 152 F.2d 851 (1945).
In Eisen v. Carlisle & Jacquelin, 2d Cir., 391 F.2d 555 (1968), the Court said at p. 562:
"Traditionally, courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of absent class members. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Of course, understandably, the standards for representation under the old spurious class action were not as rigorously enforced, due to the minimal res judicata effects *257 given to the judgments in these suits. See Oppenheimer v. F. J. Young & Co., 144 F.2d 387 (2d Cir. 1944). However, as a result of the sweeping changes in Rule 23, a court must now carefully scrutinize the adequacy of representation in all class actions." (Emphasis added.)
The alleged facts and circumstances presented in this case fail to meet the test of a true class action. The most that can be assumed from plaintiff Caswell's allegations is that there probably are other policyholders whose contract of insurance was on a printed form similar to that initially issued to him and that as to some of them the company might have exercised its option to refuse renewal or to renew with exclusions. The facts in each such case, if any, will differ in many respects and a judgment on Caswell's demands could not conceivably conclude the rights of other policyholders. At most they have a common interest in a question of law, a decision concerning which would have value as a judicial precedent only. All policyholders interested in the common question of law may join in Caswell's suit, but they are not required to do so. This might be categorized as a "spurious" class action, but it certainly is not a "true" class action authorized by LSA-C.C.P. art. 591.
Having determined that this is not a proper case for a class action, the correctness of the trial court's judgment relieving the defendant from answering the interrogatories is manifest.
The same question was presented in State ex rel. Trice v. Barnett, supra, and the court's opinion there is equally dispositive of the question here. There the court said:
"* * * These interrogatories deal with the discovery of evidence to be used in a class action and it has already been determined that a class action is not the proper procedure in this instance and that only an individual action is involved. Therefore, we feel that none of the interrogatories bear any relevancy to the subject matter of this suit nor do they tend to lead to the discovery of any admissible evidence. * * *" 194 So.2d at 455.
The petition insofar as it relates to the personal demands of the plaintiff Caswell was not dismissed and is still pending trial, therefore, this proceeding will be remanded for such further proceedings as the pleadings may require.
The judgment maintaining the exception of no right and no cause of action to proceed as a class action and dismissing plaintiff's petition to that extent is affirmed and the case is remanded for further proceedings insofar as the suit relates to the personal demands of the plaintiff.
Appellant is cast for the cost of this appeal.
Affirmed and remanded.
NOTES
[1] Executive Committee of French Opera Trades Ball v. Tarrant, 164 La. 83, 113 So. 774 (1927). This case is a good example of the application of the principle of the class action. A committee of ladies individually and as representatives of some 200 other ladies who had joined in promoting a social ball to raise money for a community project, brought suit against the impresario engaged for the project for an accounting and recovery of the proceeds.

In Re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (1958). Certain depositors in opposition to tableaux of distribution of the liquidator were successful in obtaining judgment ordering the payment of interest on deposits frozen by the bank in liquidation. The effect of the judgment inured to the benefit of all depositors. The Supreme Court thereafter applied the "fund doctrine" and allowed recovery of attorneys' fees from all depositors who had benefitted from the judgment. The primary significance of this case in our jurisprudence is not so much as it relates to a class action, but but in its application of the "fund doctrine" to reach an equitable result.