309 So.2d 144 (1975)
Terry K. STEVENS, Plaintiff-Appellant-Relator,
v.
The BOARD OF TRUSTEES OF the POLICE PENSION FUND OF the CITY OF SHREVEPORT et al., Defendants-Appellees-Respondents.
No. 54988.
Supreme Court of Louisiana.
February 24, 1975.
*146 Robert G. Pugh, Pugh & Nelson, Shreveport, for plaintiff-applicant.
John Gallagher, Roland J. Achee, W. Gene Carlton, Neil Dixon, Dixon, Thomas & Fleming, Shreveport, for defendants-respondents-appellees.
TATE, Justice.
The plaintiff, a former member of the Shreveport Police Department, brought this class action on his own behalf and on behalf of other former members of this department. The trial court sustained a peremptory exception, without evidence, dismissing this suit insofar as it was brought as a class action, La.C.Civ.P. art. 591. The court of appeal affirmed the dismissal of the class action. 295 So.2d 36 (La. App. 2d Cir. 1974).
We granted certiorari, La., 299 So.2d 352 (1974), because of a conflict between the circuits in the application of the code articles providing for the availability of the class action. We also felt that the interpretation of the code articles, as enunciated by the court of appeal decision in this case, unduly restricted the availability of the class action, whether or not the result is correct.
Facts
The plaintiff institutes this suit individually and on behalf of all police officers of Shreveport who terminated their employment after the effective date of Act 641 of 1968 (La.R.S. 33:2351 et seq.). The legislation, which created a police pension fund for Shreveport, provides for compulsory contributions of 6% of the salary of policemen while employed; but, although a policeman may not be entitled to benefits from the fund, his contributions are not refunded when his police employment is terminated.
Contending that the denial of refund of his compulsory contributions denies constitutional rights, the plaintiff prays for refund to him, and to all other police officers who have since 1968 terminated their employment, of the compulsory contributions exacted from them during their former employment as police officers. The plaintiff alleges that the class of police officers so designated includes approximately one hundred, that they are located in many different parts of Louisiana and in other states, and that thus they are so numerous as to make it impracticable for all of them to join or to be joined as parties. The petitioner notes that he himself had made compulsory contributions in excess of $1,300 and that the claims of the class are approximately one hundred thousand dollars.
Conflict Between The Circuits
As will be amplified later, Article 591 of the Louisiana Code of Civil Procedure provides that a class action may be instituted, under certain conditions, where the "character of the right" at issue is "common to all members of the class."[1]
In holding that the right sought to be enforced by the plaintiff is not "common" to others of his alleged class, the Second and Fourth Circuits have, as in the present case, held that the right is not "common" when arising out of a similar action by or relationship of the defendant involving an identical issue of law, if in fact the claims are separate and distinct and the presence of all members of the class is not necessary for the enforcement of the common right. See: The instant decision of the *147 Second Circuit, cited above;[2] Caswell v. Reserve National Insurance Co., 234 So.2d 250 (La.App. 4th Cir. 1970), certiorari denied, 256 La. 364, 236 So.2d 499 (1970); Veal v. Preferred Thrift & Loan of New Orleans, Inc., 234 So.2d 228 (La.App. 4th Cir. 1970). The effect of this test is to make the class action unavailable except when the members of the class, too numerous to be joined, are indispensable or, at least, necessary parties.
Although the result may (or may not) have been correct under the facts of each particular case, the test adopted by these decisions negates the availability of the class action in all cases except where indispensable (or perhaps necessary) parties are too numerous to be joined. For reasons to be stated, in our view this stringent test was not intended by the legislature.
The test of the First Circuit, on the other hand, is less restrictive of the class action. Once the requirement has been met that the members of the class are too numerous for it to be practicable to join them, the test applied by that circuit is whether there is a "community of interest" or a "common interest," despite monetary or incidental differences in the claims of the members of the class. Verdin v. Thomas, 191 So.2d 646, 651 (La.App. 1st Cir. 1966). See also Bussie v. Long, 286 So.2d 689, 693 (La.App. 1st Cir. 1973), as well as class action decisions (where this rule was applied, although not articulated) in Latino v. City of Bogalusa, 295 So.2d 560 (La.App. 1st Cir. 1974) and White v. Board of Trustees of Teachers Retirement System, 276 So.2d 714 (La.App. 1st Cir. 1973), certiorari denied 276 So.2d 694 (La.1973).
The test of "common interest" or "community of interest" thus applied is quite similar to that expressly authorized by code for permissive joinder of parties (cumulation of actions). The "community of interest" upon which permissive joinder is based, La.C.Civ.P. art. 463(1), refers to the parties' causes of actions (or defenses) "arising out of the same facts, or presenting the same factual and legal issues." Official Revision Comment (c), Article 463. See also Gill v. City of Lakes Charles, 119 La. 17, 43 So. 879 (1907).
The result is correct in each of the cited First Circuit decisions allowing a class action. Further, the "community of interest" or "common interest" concept is certainly a factor in determining whether, other requirements for the class action having been met, "the character of the right ... is ... Common to all members of the class", La.C.Civ.P. art. 591(1).
Nevertheless, the liberal community-of-interest requirement for permissive joinder of parties (providing venue and jurisdiction requirements of the court are met, La.C.Civ.P. art. 463(2)) are not historically nor functionally the basis of membership in a class for class-action purposes. (However, it reflects a policy-value in our code of civil procedure indicative of a code policy to avoid where possible a multiplicity of actions in the interests of judicial efficiency, providing it can be done without unfairness to the parties affected.)
The Class Action
The class action of our 1960 code of civil procedure, Articles 591-97, was adapted from a federal rule; however, the concept *148 had earlier been jurisprudentially recognized in Executive Committee of French Opera Trades Ball v. Tarrant, 164 La. 83, 113 So. 774, 53 ALR 1233 (1927). See: Official Revision Comment, Article 591. The federal rule and the decisions upon which founded had themselves been derived from or founded on an ancient English equity practice. James, Civil Procedure, Section 10.18 (1965); 71 Har.L.Rev. 928-29 (1958).
As stated by James, Id. at p. 494: "The class suit device was an attempt to solve practical problems stemming from other sources: the unwieldy number of parties who should be joined in some cases, with the concomitant likelihood that the membership of so large a group would keep changing (from death or otherwise) so that there would be recurring interruptions for abatement and revival of the action, and also the likelihood that one or more of the members would be beyond reach of the court's process. The device that evolved allowed suit to be brought by or against representatives of a class. And a decree in favor of or against the representatives bound all members of the class." (Italics ours.)
Our essential inquiry here concerns ascertaining the functional reasons underlying the legislative intent, in providing a class action, as to why the unwieldly number of parties "should be joined in some cases."
The class action of our code of civil procedure, Articles 591-97, is adapted from Federal Rule of Civil Procedure 23 as originally promulgated in 1937.[3] Official Revision Comment (b), La.C.Civ.P. art. 591. Articles 591(1)[4] and 592[5] are pertinent to our present query. They show that, in sanctioning class actions, the legislature has imposed the following requirements: (1) a class so numerous that joinder is impractical; (2) the joinder as parties to the suit of one or more parties who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class; and (3) a "common character" between the rights of the representatives of the class and the absent members of the class.
*149 For purposes of these appellate proceedings, it is not disputed that the class action sought to be maintained here meets the first two requirements. For present purposes, the narrow issue for our determination is to determine the intent of the requirement of our code provision (the third above summarized) that "the character of the right sought to be enforced ... [must be] ... Common to all members of the class ...."
The formula was patterned after the language which authorized the federal class action by the original version of Rule 23 of the Federal Rules of Civil Procedure. (See Footnote 3 above.) However, the word "joint" in the federal rule "was eliminated [from the Louisiana adaptation] since the phrase `common to all members of the class' includes the Louisiana joint right or obligation." Official Revision Comment (b), Article 591 of our Code.
The Louisiana joint obligation is a divisible and not a collective obligation, with each joint obligee entitled to recover only his proportional part of the obligation. Civil Code articles 2079-2080, 2086; Official Preliminary Statement to Title 3 ("Parties"), Chapter 1 ("Joinder"), Louisiana Code of Civil Procedure; McMahon, The Joinder of Parties in Louisiana, 19 La.L.Rev. 1, 10-11 (1958). Thus, that different recoveries are sought, based upon the same factual transaction and same legal relationship, was not intended to defeat a class action. (As these sources note, the joint obligation of the common law is quite different than the joint obligation of the civil law.)
On the other hand, Article 591 deliberately eliminated the spurious and the hybrid class action of Federal Rule 23. See Official Revision Comment (c). They were eliminated primarily because, in intent and practice, they were actually permissive joinder devices, needed in federal practice, but not needed under the liberal permissive joinder and intervention policy of Louisiana's 1960 Code of Civil Procedure. See Arts. 463 and 1091 and Official Revision Comments. Only the "true" class action of the federal rule was intended to be adopted; but primarily with reference to the effect of such federal classification that, "if the representation of the members of the class is adequate, the judgment concludes not only the representative parties, but all other members of the class who are joined as parties." Official Revision Comment (c), Art. 591. (In accordance with this intention, Article 597 so provides.[6])
Based upon the intention to adopt only the true class action, the Fourth Circuit held: "The true class action is one in which except for the use of the class action the joinder of all interested parties would be necessary for the enforcement of the joint or common right." Caswell v. Reserve National Insurance Co., La.App., 234 So.2d 250, 255-56 (1970). The court of appeal in the present case followed this decision as authority for its present holding that the class action is not available unless the absent parties are, in effect, indispensable parties.
However, the sole authority cited by the Caswell decision for its stringent test is a treatise reference 2 Barron & Holtzoff, Federal Practice and Procedure, verbo Rule 23 "Class Actions", Section 562 (1961). Some of the decisions allowing a class action, it is true, justified it on the ground noted. See 3 Moore's Federal Practice, Section 23.08(1) ("The True Class Suit Under Original Rule 23") (Appendix, 1969).
However, both cited treatise sources note that, in determining that the character of the right was "common," so as to allow a class action, many other types of rights have been held to be common, such as the protection of seniority rights, System Federation *150 No. 91, Ry. Emp. Department v. Reed, 180 F.2d 991 (CA 6, 1950), or such as the restoration of trust funds for the distribution of the proceeds to the holders of collateral notes secured thereby, Citizens Banking Co. v. Monticello State Bank, 143 F.2d 261 (CA 8, 1944), or such as an action by mineral and royalty owners of undivided fractional interests against a mineral lessee to recover damages for breach of contract, Williams v. Humble Oil and Refining Co., 234 F.Supp. 985 (E.D. La., 1964). See also Section 562.1, Barron & Holtzoff. These involve the recognition of separate and distinct rights for the respective individuals of a class, although based upon a right of a common character.
The cited treatise sources note the difficulty of the courts in ascribing a meaningful definition to the test of a "common" character of the right sought to be enforced. The Advisory Committee, in recommending the 1966 revision of the rule, also took note of the difficulty of characterization required by this term of indefinite and imprecise meaning, and it therefore recommended the amended rule as describing "in more practical terms the occasions for maintaining class actions." Moore's Federal Practice, Section 23.01(8) (1969).
The criteria so set forth (to be noted below) are, we think, indicative of the guidelines for ascertaining the occasions for maintaining class actions under our own code articles. As earlier noted, class actions are allowable under them when (1) the class is so numerous that joinder is impractical and (2) there is a "common character" between the rights of the representatives of the class and the absent members, (3) providing one or more parties to the suit are members of the class and so situated as to provide adequate representation. The federal criteria were an attempt to translate these abstractions into pragmatic terms.
Criteria or Guidelines for Affording Class Actions
The original federal class action from which our Article 591 was adapted provided for three kinds of class actions, the so-called "true", "hybrid", and "spurious". The hybrid and spurious class actions generally required no more connexity between the rights of the representative and of the absent members than the existence of a common question of law or fact, whereas the true class action required a stronger relationship between the claims. Thus, we are satisfied that, in rejecting the hybrid and spurious class actions our legislature intended that there be a relationship between the claims greater than simply that of sharing a common question of law or fact.
The thrust of the 1966 revision of the federal class action was to recognize the difficulty of applying a conceptual test to a problem which demands a pragmatic approach. In essence, the federal rule makers have left much discretion to the trial judge in ascertaining whether a class action should be maintained, but they have given the judge a number of guidelines to aid him in determining how the discretion should be exercised.
The gist of this discretionary grant is contained in Rule 23(b) of the 1966 revision, which provides that:
"* * * An action may be maintained as a class action if the prerequisites of subdivision (a)[7] are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
*151 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
These guidelines emphasize limiting the use of the class actionwhen a common-based right is at issue and other requirements are met (such as too-numerous parties to join and adequate representation of the class)to occasions where the class action will be clearly more useful than other available procedures for definitive determination of a common-based right, if such definitive determination in the single proceedings should be afforded in the interests of the parties (including both the class and the opponent(s) to it) and of the efficient operation of the judicial system.
In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudication of the claims. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action.
We should note once again that existence of a common question of law or fact does not by itself justify a class action, even though the parties be too numerous to be joined practicably and even though adequate representation is afforded by the typical member or members of the class who are parties to this suit. To this extent, the criteria of the revised Federal Rule 23 had been rejected by our legislature.

*152 Procedural Vehicle to Question Class Action

In the present case, the defendants sought to raise the issue of the non-availability of the class action device by the peremptory exception urging the objections of no cause of action and of no right of action (want of interest). La.C.Civ.P. art. 927(4) and (5).
The exception urging no cause of action must be determined on the face of the pleadings. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961). The exception urging no right of action is a threshold device to terminate a suit brought by one who has no interest in it. Wischer v. Madison Realty Co., 231 La. 704, 92 So.2d 589 (1957). Clearly, neither peremptory objection, as historically limited, is appropriate to raise the defense.
However, since "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law", La.C.Civ.P. art. 923, the defense (if raised by an exception, Article 921) is of a peremptory nature. See La.C.Civ.P. art. 926, listing the five objections historically raised by the peremptory exception, but noting that the grounds "include, but are not limited to" them.
We note this, because the First Circuit had held that the defense is in the nature of a dilatory objection of lack of procedural capacity, La.C.Civ.P. art. 926(6), which was waived since not specially pleaded in limine, Article 928. While argument could be made that the defense is of a nature which merely retards but does not defeat the action and thus is dilatory in nature, Article 923, the better view in our opinion is that the exception to the use of the class action is of so fundamental a nature as to be a peremptory objection which may be pleaded at any stage of the proceeding prior to submission to the trial court, Article 928.
This is also the better view because, in the normal course of a class action, subsequent developments may indicate reasons for limiting or expanding the class, or for noticing the propriety or impropriety of the action under the developing facts, or of excluding members of the class who, after notice, do not want to join in the action. See, for example, Federal Rule 23(c) and (d)(1966). Flexibility of amendment of pleadings is better served, and the function of the defense is better classified, by characterizing the defense as peremptory and not as (waivable) dilatory.[8]
The peremptory exception urging this defense need not be heard on the pleadings alone. See Article 931. When the right to proceed by class action is contested, the trial court in the exercise of its discretion in applying the guidelines may need some showing in addition to the pleadings.
We do not touch upon the requirements of notice to the absent members of the class (to allow them to come forward, to be silent, or to exclude themselves from the action), nor upon the mechanics to assure such practicable notice as is required by due process before the judgment in the class action can conclude them. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Maraist and Sharp, Due Process and the Class Action, 49 Texas L.Rev. 1 (1970).
Conclusion
The trial court dismissed the present as a class action on the face of the pleadings and in reliance upon an intermediate decision we find to be erroneous as a matter of law. We deem it appropriate to *153 remand the matter to the trial court for further hearing, since there was no prior opportunity to determine the availability (or not) of the class action in the light of the clarified guidelines we have above set forth, and since the parties did not have the opportunity to make such showing as they deem appropriate in the light of these guidelines.
Decree
For the reasons assigned, we set aside the judgments of the previous courts which dismissed this suit as a class action, and we remand this case to the district court for further proceedings consistent with the views here expressed.
Reversed and remanded.
SANDERS, C. J. and MARCUS, J., concur in the decree.
SUMMERS, J., dissents and assigns reasons.
DIXON, J., is recused.
SUMMERS, Justice (dissenting).
The only issue presented is the propriety of the use of the class action under the alleged facts of plaintiff's petition. The issue was drawn by a ruling sustaining an exception of no cause and no right of action filed by defendant. On such an exception, only the well-pleaded facts of plaintiff's petition are considered, for no evidence was introduced to support the exception of no right of action.
Class actions in Louisiana are a relative novelty. The concept gained statutory dignity with the enactment of Articles 591-97 of the Code of Civil Procedure. These Articles are an acceptance of part (but not all) of Rule 23(a) of the Federal Rules of Civil Procedure, which covers three separate and distinct types of class actionthe true, hybrid and spurious class actions. Louisiana has only accepted the true class action. For these reasons federal authorities relied upon in the Court's opinion are not relevant here.
Insofar as pertinent here, Article 591 of the Code of Civil Procedure limits the use of the class action to cases "when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is: (1) Common to all members of the class ...." Comments to that Article define the true class action, the hybrid and the spurious class actions, and concludes that "There is no need for either the hybrid or the spurious class action in Louisiana, and therefore this Code provides for only the true class action."
The reasons given for this unambiguous expression of the rationale underlying Article 591 is that the liberality of cumulation of actions and of intervention in Louisiana's procedure accomplish the same purpose of the spurious class action directly and much more simply. Cf. Arts. 463 and 1091 La.Code Civ.P. See e. g. Hernandez v. Ethyl Corp., 224 La. 470, 70 So.2d 92 (1954). While there is a need for the hybrid class action in federal practice where the creditor's bill for the appointment of a receiver and the equitable bill of peace are involved, 3 Moore's Federal Practice (2d ed) 3439 (1948), no corresponding need exists in Louisiana. For, in the first case, our receivership act expressly provides that a single creditor or shareholder may sue to provoke the appointment of a receiver, La.R.S. 12:151; and, in the second instance, the concursus procedure of this State is broad enough to provide the necessary remedy. La.Code Civ.P. arts. 4651-62. From these comments it is inescapable that only the true class action is authorized in this State.
In the true class action, if the representation of the members of the class is adequate, the judgment concludes not only the representative parties, but all other members of the class who are not joined as parties.
*154 A distinguishing feature of the true and the hybrid or spurious class actions is that in the true class action the claims are joint or common, whereas in a hybrid or spurious class action the claims are several. See Caswell v. Reserve National Insurance Co., 234 So.2d 250 (La.App.1970); Wright & Miller, Federal Practice and Procedure: Civil § 1752.
To invoke the true class action, the character of the right sought to be enforced must be such that, except for the use of the class action, the joinder of all interested parties would be necessary for the enforcement of the joint or common right. Caswell v. Reserve National Insurance Co., supra.
Applying these principles to the facts alleged, I find that the plaintiff asserts no claim common to all members of his purported class. Although a determination that former employees are entitled to a reimbursement may be common to all employees, the amount due each would have to be the subject of a separate proceeding. And a decision of plaintiff's suit will not preclude any subsequent action by other former employees of the police department, making the class action impracticable. On the other hand, no other member of the class is an indispensable party to plaintiff's suit, each may assert his rights without the other, making individual suits practicable.
In other words, this suit may be an invitation to other persons similarly situated to join the action, each on an individual basis for the adjudication of the several rights each may have against the common defendant. Only such parties as actually join the action will be concluded, and failure or success of the action will not affect the rights of any party not joined. A decision of the question of law common to all persons who have contributed to the pension fund will, at most, have only such effect as that usually given to a judicial opinion. Veal v. Preferred Thrift & Loan of New Orleans, Inc., 234 So.2d 228 (La.App.1970).
Again, the claim presented by Terry Stevens is a money demand. His claim will neither be improved nor diminished by compelling the involuntary joinder of the claim of every ex-Shreveport policeman leaving the force since 1968. His right, if any, to recover his contribution to the retirement fund is not a right held jointly or in common with any other person. While there may be similar issues of law involved, there exists no reason for Stevens to compel all ex-Shreveport policemen leaving the force since 1968 to be joined in the suit. Stevens has not alleged, and the record does not reflect, that other members of his class seek or even desire the result Stevens seeks. See State ex rel Trice v. Barnett, 193 So.2d 452 (La.App.1966).
Policy reasons also underlie Louisiana's discriminating choice of the true class action. Unlike the Federal Congress, it has never been the policy of the Louisiana legislature to permit the fomentation of litigation. An abuse of the class action concept can result in exactly that, particularly if a litigant is able to force into his case claims of all other persons having a similar factual situation whether or not those persons desire to make a claim.
A special circumstance of the Louisiana class action is to allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of a class action a fund is made available, or a recovery or compromise is had which is beneficial to the class. La.Code Civ.P. art. 595. True class actions contemplate a situation where the numerous members cannot, as a practical matter, assert their claims separately, and one judgment will resolve the rights of all. Thus if this action is allowed, notwithstanding that it does not meet this test, attorneys' fees will be allowed if the action succeeds where none are properly due if the individuals filed their suits separately in a nonclass action as the law requires. This was not the policy envisioned in the adoption of Louisiana's class action legislation.
I respectfully dissent.
NOTES
[1] Article 591, in full, provides:

"A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
"(1) Common to all members of the class; or
"(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right."
(We are not here concerned with the secondary class action recognized by 591(2).)
[2] See, e. g., the court of appeal summary in the present case, 295 So.2d 40-41:

"Plaintiff in the instant case makes no claim or demand which is common to all members of the class which he seeks to represent. No other member of the class is an indispensable party to his suit. His claim, independent of and separate from those of all other claimants, is presented in the form of a demand for reimbursement of funds allegedly wrongfully refused him upon his termination of service as a policeman. His right is not one held in common with the others of the so-called `class,' though the same or similar issues of law would be involved in actions taken individually by other policemen."
[3] Due to its unworkability as initially drafted, the rule was substantially revised in 1966. See: 3 Moore's Federal Practice, Section 23.01(8) (1969 revision); 7 Wright & Miller, Federal Practice and Procedure, Section 1753 (1972).

As originally promulgated in 1937, Rule 23 provided, pertinently to our discussion:
"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it [the "true" class action];
(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action [the "hybrid" class action]; or
(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought [the "spurious" class action].
For brief summary of the "true", "hybrid", and "spurious" class actions, as founded upon the original text of Federal Rule 23, see 3 Moore's Federal Practice, Section 23.30 (1969 revision). Also, for brief discussion of the "joint" obligation and the "several" obligation of the common law, and their considerable differences from the similarly termed obligations of the civil law, see Wilks v. Allstate Insurance Co., 195 So.2d 390, 397-98 (La.App.3d Cir. 1967).
[4] Article 591(1) provides: "A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is: (1) Common to all members of the class * * *."
[5] Article 592 provides: "One or more members of the class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members."
[6] Article 597 of the Louisiana Code of Civil Procedure provides: "A definitive judgment on the merits rendered in a class action concludes all members of the class, whether joined in the action or not, if the members who were joined as parties fairly insured adequate representation of all members of the class."
[7] Subsection (a) of the rule provides: "* * * One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
[8] Since a peremptory exception may be filed at any time in the trial court, Article 928, the same effects of flexible regulation of the action could be afforded by contradictory motions. Article 961.