336 So.2d 799 (1976)
SERVI-CLEAN INDUSTRIES, INC.
v.
TONTI MANAGEMENT CORPORATION.
No. 57341.
Supreme Court of Louisiana.
June 21, 1976.
Rehearing Denied September 10, 1976.
Walter E. Kollin, Metairie, for defendant-respondent.
Joseph W. Nelkin, New Orleans, for plaintiff-applicant.
DIXON, Justice.
We granted writs in this case to review plaintiff's contention that the trial court and Court of Appeal erred in failing to find that the institution of suit by Servi-Clean, *800 one of the creditors of McCarthy Construction Company, Inc., constituted an assertion of the rights of all of McCarthy's creditors under provisions of the Louisiana Bulk Sales Act, R.S. 9:2961-2968.[1]
On August 27, 1971 Tonti Management Corporation purchased from McCarthy Construction Company the Governor House Hotel in New Orleans, including all fixtures, furniture and equipment used in the hotel's operation. A restaurant and cocktail lounge formed part of the hotel's operation. The equipment included stoves, refrigerators, tables, chairs and a cash register. Tonti admitted that the requirements for a sale under the Bulk Sales Law were not complied with.
On March 20, 1972 Servi-Clean, a creditor of McCarthy, filed suit against Tonti, alleging Tonti was indebted to Servi-Clean in the sum of $3899.37 plus interest and attorneys' fees, representing the balance due on a promissory note issued by McCarthy in favor of Servi-Clean. Plaintiff alleged that Tonti, as transferee of McCarthy in violation of the Bulk Sales Law, "should be held liable to petitioner and any other creditors of McCarthy Construction Company, Inc., if there be any, as receiver for the fair value of all property so transferred to it." Tonti answered, averring that the sale was not subject to the provisions of the Bulk Sales Law.
On February 16, 1973, more than one year after the sale of the Governor House from McCarthy to Tonti, Servi-Clean filed a petition in intervention, asserting a class action, with itself as class representative, on behalf of all creditors of McCarthy. This intervention by Servi-Clean is at the crux of the present controversy. Servi-Clean filed a motion for summary judgment at the time the intervention was filed.
Tonti Management Corporation thereafter excepted to the petition in intervention, on the grounds of no right or cause of action and prescription.[2]
On March 30, 1973 the first of a series of judgments was rendered in this matter. The trial judge held (1) not only was summary judgment not available for the plaintiff, but that the record, including all pleadings and depositions filed therein, failed to disclose a cause of action against the defendant in the original action and (2) the exceptions of no cause of action and prescription filed by Tonti in response to the petition in intervention were well-founded and therefore sustained. Accordingly, the trial court dismissed both the original petition and the petition in intervention.
Servi-Clean appealed. Servi-Clean Industries Inc. v. Tonti Management Corp., 294 So.2d 580 (La.App.4th Cir. 1974). In the course of its opinion, the court held:
"We find the trial court committed an error of law in sustaining the peremptory exception ex proprio motu to plaintiff's petition. However, we find the ruling of the trial court was correct in sustaining *801 the exception of prescription to the intervenor's petition in intervention.
"Herein we are not passing on the procedural correctness of a creditor of a transferor (seller) to bring a class action for other alleged creditors of a transferor under LSA-C.C.P. Articles 591 through 597 to recover a debt under the provisions of the Bulk Sales Law. For the purpose of passing on the exception of prescription of one year we are assuming, arguendo, that the class action procedure utilized by Servi-Clean is correct.
. . . . . .
"The sustaining of the exception of prescription is restricted to the effort asserted by Servi-Clean to collect the alleged debts by means of the petition in intervention on the class action. Servi-Clean had notice of the failure of the buyer to comply with the requirements of LSA-R.S. 9:2961 for more than one year prior to the filing of the petition in intervention. 294 So.2d 580, 582, 583.
The Court of Appeal went on to hold that Tonti had violated the Bulk Sales Law and was therefore liable to the plaintiff. The court concluded:
"It was admitted that the buyer and seller did not comply with LSA-R.S. 9:2961 et seq. and it was further admitted that should we find this sale is within the purview of this law, the plaintiff is entitled to judgment.
"Accordingly, for the above and foregoing reasons, the judgment of the trial court sustaining the exception of prescription of one year to the petition in intervention in the class action is sustained, and the class action is dismissed. The judgment of the trial court sustaining the peremptory exceptions, ex proprio motu, to the plaintiff's petition is reversed and there is judgment herein in favor of Servi-Clean Industries, Inc., plaintiff-appellant, and against Tonti Management Corporation, defendant-appellee, in the sum of $3,899.37, together with 8 per centum per annum interest thereon from June 17, 1971, until paid, plus 10 per cent of the principal and interest as attorney's fees." 294 So.2d 580, 583-584.
This decision was handed down on January 8, 1974. Both parties applied for a rehearing. Servi-Clean, in its application for a rehearing, admitted that it was not entitled to a personal judgment against Tonti for McCarthy's debt, as granted by the Court of Appeal, but was limited to a judgment against Tonti as receiver, for its pro rata share of the fair value of the property transferred by McCarthy to Tonti. Servi-Clean also alleged that the Court of Appeal erred in finding the claims of the other creditors prescribed, and dismissing the petition in intervention, and asked for a rehearing on that issue.
Tonti, in its application for a rehearing, alleged that the court erred in holding that the Bulk Sales Law applied to the sale of the Governor House, and, more seriously, that the court erred in holding Tonti personally liable to the creditor for the full amount of the claim, rather than as receiver for the fair value of all the property transferred.
The Court of Appeal granted a limited rehearing[3] on February 6, 1974:
"ON APPLICATION FOR REHEARING
"We grant a rehearing herein for consideration of:
"The extent of liability of Tonti Management Corporation for the debts of the transferor, McCarthy Construction Company.

*802 "Arguments on briefs only to be submitted within 15 days from this date.
"In all other respects the applications for rehearing are denied.
"Limited rehearing granted."
294 So.2d 580, 584. (Emphasis added).
No application for writs was taken by Servi-Clean from this action of the Court of Appeal. Plaintiff, Servi-Clean, apparently was of the belief that the Court of Appeal in granting a rehearing as to the "extent of liability of Tonti . . . for the debts of . . . McCarthy" was reopening the entire matter of Tonti's liability to McCarthy's creditors.
On rehearing, the Court of Appeal remanded the case to the trial court for the sole purpose of determining the fair value of the property received by Tonti, the total amount of viable claims and their dignity and rank. In its decree on rehearing the court stated:
"Accordingly, the judgment of the trial court is reversed and these consolidated cases are remanded to the trial court for the restricted purpose of further proceedings in accordance herewith. All costs of this appeal are assessed against Tonti Management Corporation, and the assessment of all other court costs to await final determination of the cases." 294 So.2d 580, 584-585.
This decree was handed down on May 10, 1974. No application for writs was made to this court from the judgment remanding the case to the trial court. Instead, Servi-Clean filed in the trial court a rule to show cause why it should not be designated class representative for the creditors in a class action under the Bulk Sales Law. On June 21, 1974 the trial judge dismissed the rule, believing that the Court of Appeal had affirmed the earlier decision dismissing the petition in intervention.
From the dismissal of the rule to show cause, Servi-Clean applied for writs to the Fourth Circuit and also appealed. Writs were denied on July 16, 1974 by the Fourth Circuit. On August 15, 1974 Servi-Clean applied for writs in this court which were denied on October 11, 1974 with the notation, "Writ denied, reserving the right, if any, to review on appeal." La., 300 So.2d 845.
On November 11, 1975 came the final decision of the Court of Appeal, from which these writs were granted. Servi-Clean Industries, Inc. v. Tonti Management Corp., 322 So.2d 445 (La.App.4th Cir. 1975). In that opinion the court stated:
"The sole issue in this appeal is whether our judgments in the previous appeal (on original hearing and on rehearing) reversed the judgment of the trial court in its entirety, or whether our judgments affirmed the dismissal of the petition of intervention, while reversing only that part of the trial court judgment pertinent to the original demand and remanding for a determination solely of that demand. The decision, as to whether Servi-Clean's right (if any) to represent all or most of McCarthy's creditors in this action has prescribed, was clearly pronounced on original hearing. The decision on that issue was not affected by the limited grant of rehearing, and the application for rehearing as to that issue was denied. Neither the trial court nor this court (if we were inclined to do so) has the power and authority to now reconsider and modify or change the decision as to that issue. Whether or not the Supreme Court can do so, in view of Servi-Clean's failure to apply for certiorari when part of a trial court judgment was affirmed and part was reversed and remanded, is not for us to decide.
"The judgment dismissing the rule is affirmed." 322 So.2d 445, 447-448.
*803 In a footnote the Court of Appeal further explained its previous action:
"This court did not decide in the previous appeal (and indeed could not decide, since the judgment appealed from simply maintained an exception of no cause of action) whether or not Servi-Clean's timely suit interrupted prescription as to all claims. This court did decide that the intervention asserting a class action (if necessary to interrupt prescription as to the other claims) came too late." 322 So.2d 445, 448.
On the application of Servi-Clean we granted writs because of uncertainty as to the effect of the holding that the intervention asserting the class action "came too late" following a contention that Servi-Clean's timely suit did not interrupt prescription as to all claims, in spite of the provision of R.S. 9:2963 that "at the suit of any creditor" the purchaser should be liable to all the creditors as receiver if the Bulk Sales Law is not observed.
The record is clear that the trial court sustained an exception of no cause of action on its own motion to Servi-Clean's principal demand, and sustained an exception of no cause of action and prescription against the intervention in which plaintiff attempted to assert a class action.[4] In its first opinion, the Court of Appeal reversed the ruling of the trial court holding that Servi-Clean's first petition did not state a cause of action, but affirmed the trial court in sustaining the exceptions to the petition in intervention. Then it was that the Court of Appeal erroneously granted Servi-Clean a judgment against Tonti for the full amount of the original claim.
In this context the grant of limited rehearing by the Court of Appeal is unambiguous. The judgment of the trial court sustaining the exception to the intervention was left intact.
That portion of the Court of Appeal judgment has now become final. It put an end to one portion of the litigation. The trial court held, and the Court of Appeal affirmed the holding, that the intervention should be dismissed upon the exceptions of no cause of action and prescription.
An intervention is a demand incidental to the main demand (C.C.P. 1031), may be tried separately, and may result in a separate judgment (C.C.P. 1038) or a partial judgment (C.C.P. 1915).
C.C.P. 2167 governs the finality of judgments of appellate courts:
"A judgment of an appellate court becomes final and executory when the delay for applying for a rehearing has expired and no application therefor has been made.
"When an application for a rehearing has been applied for timely
"(1) A judgment of the supreme court becomes final and executory when this application is denied; and
"(2) A judgment of a court of appeal becomes final and executory when the supreme court denies a timely application for a writ of certiorari in the case; or on the expiration of thirty days after the denial of a rehearing by the court of appeal, if no timely application has been made to the supreme court for a writ of certiorari."
Since the holding of the Court of Appeal that the intervention was properly dismissed was a final determination of an action or proceeding, Servi-Clean could only hope to obtain relief from that *804 judgment in this court.[5] Since no timely application was made to this court for a writ of certiorari within thirty days after the denial by the Court of Appeal of Servi-Clean's application for rehearing on the question of the dismissal of the petition in intervention, that judgment became final and was not subject to reconsideration.
The question of whether Servi-Clean's original petition interrupted prescription running against claims of other creditors is not now before us, and has yet to be litigated. No other creditor of McCarthy is before us, nor does it appear from the record that any others have appeared in this case in the lower courts.[6]
The Court of Appeal correctly affirmed the dismissal of the rule to show cause, and its judgment is affirmed at relator's cost.
SUMMERS, J., concurs for reasons assigned.
SUMMERS, Justice (concurring).
I concur in the result because I do not agree with the apparent approval of Stevens v. Board of Trustees, 309 So.2d 144 (La.1975) by the majority opinion.
NOTES
[1] Specifically, plaintiff relies on a portion of R.S. 9:2963, which states:

"Any person to whom any of the property mentioned in R.S. 9:2961 shall be so transferred, who shall pay any part of the consideration therefor to such transferor, or who shall execute or deliver to the transferor or to his order, or to any person for his use, any promissory note or other evidence of indebtedness for the transfer or any part thereof without first having demanded and received from the transferor or from his agent the statement provided for in R.S. 9:2962B. verified as therein provided, and without paying or seeing to it that the purchase money or other consideration of the transfer is applied to the payment of the bona fide claims of the creditors of the transferor pro rata according to the dignity of their several claims as shown upon the verified statement, and without first having sent the notices of said transfer and such statement of creditors as provided for in R.S. 9:2962C., shall at the suit of any creditor, be held liable to all the creditors of the transferor as receiver for the fair value of all the property so transferred to him.. . ."
[2] It was held in the case of McCaskey Register Co. v. Lumpkin, 195 So. 852 (La. App.1st Cir. 1940) that the failure to comply with R.S. 9:2961 et seq. is an offense or quasi offense which prescribes in one year.
[3] Because of difficult questions which frequently arise in granting limited rehearings, this court presently follows the practice of simply granting a rehearing and requesting argument on the particular points which are of concern. This practice is thought to be preferable, unless, in an extraordinary case, justice seems to require that part of a judgment become final while other issues are further litigated.
[4] For a discussion of guidelines which might assist in deciding whether a case is suitable for a class action in Louisiana, see Stevens v. Board of Trustees of the Police Pension Fund, etc., La., 309 So.2d 144 (1975).
[5] It is possible to argue that the dismissal of the intervention was not a final judgment as defined in C.C.P. 1841 because it made no determination on the merits of the case:

"A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
"A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
"A judgment that determines the merits in whole or in part is a final judgment." C.C.P. 1841.
The judgment dismissing the intervention was a determination that the plaintiff did not have available to him the advantages of bringing a class action as a representative of a class of creditors against the defendant. At least to this extent, the judgment, dismissing the intervention "trench(ed) upon the merits of the cause." This problem was early dealt with in Gary v. Richardson, 35 La.Ann. 505 (1883):
"It is not always easy to discriminate between interlocutory and final judgments, particularly which, among the former, can or not cause an irreparable injury. There exists, however, a signal difference between the two. Interlocutory judgments are the decrees rendered, whether before or after the suit is ended and all the matters involved therein are set at rest. They are ancillary to, or executory of the final and complete adjudication, and do not pass upon the merits of the controversy. Final judgments are those by which rights of parties, at issue on the merits of the suits, are adjudicated upon partially or entirely. C.C. 538, 539. . . .
. . . . . .
"An interlocutory judgment should not trench upon the merits of the cause; but the moment that it does, it acquires a character of finality, which assimilates it to a final judgment and renders it appealable. It is not essential for a judgment to be final, that it should settle all of the rights existing between the parties to the suit. All that is required is, that it determine issues involved on the merits of the action. The judgment is none the less final, because some future orders of the court may become necessary to carry it into effect. The nature of such an order depends upon the effect produced by the adjudication upon the rights and interest of parties. The stage at which it is made is not the test for appellate purposes. If an interlocutory order will finally affect the merits of the case, or deprive a party of any benefit which he may have at the final hearing, an appeal is allowable. . . ." 35 La.Ann. 505, 506, 507.
Granting a limited rehearing is analogous to cases in which this court has limited review when granting writs. Two cases in which we have held that a grant of certiorari limited to the review of certain assignments of error permits the judgment to become final as to all other matters in contest are Deposit Guaranty National Bank v. Shipp, 252 La. 745, 214 So.2d 129 (1968) and Pringle-Associated Mortgage Corp. v. Cox, 258 La. 499, 246 So.2d 841 (1971).
[6] One other creditor, Pinkerton's, Inc., filed suit against Tonti. Its case was consolidated at trial with Servi-Clean's. See Pinkerton's, Inc. v. Tonti Management Corp., 294 So.2d 585 (4th Cir. 1974). Pinkerton's was not involved in the petition in intervention, and is not before us.