705 So.2d 1168 (1997)
Major BANKS, Christopher Edwards, et al.
v.
The NEW YORK LIFE INSURANCE CO., et al.
No. 97 CA 0837-R.
Court of Appeal of Louisiana, First Circuit.
December 29, 1997.
Rehearing Denied February 2, 1998.
*1169 Randy J. Ungar, New Orleans, Robert M. Johnson, New Orleans, C. Jerome D'Aquila, Debra Brewer Hayes, and Andres Pereira, New Roads, Jules B. LeBlanc, Baton Rouge, for Plaintiffs-Appellees Major Banks, Christopher Edwards, et al.
Eugene R. Preaus, New Orleans, Patrick W. Pendley, Plaquemine, Nancy J. Marshall, New Orleans, Phillip A. Whittman, New Orleans, Stephen J. Goodman, Washington, DC, for Defendant-Appellant The New York Life Insurance Co., et al.
Before LeBLANC and FITZSIMMONS, JJ., and CHIASSON, J. Pro Tem.[1]
REMY CHIASSON, Judge Pro Tem.
The sole issue in this appeal is whether the trial court erred in granting certification as a class action.
In January, 1996, plaintiffs filed suit in the Eighteenth Judicial District Court, for the Parish of Pointe Coupee, Louisiana, for themselves individually and as representatives of all persons similarly situated, against The New York Life Insurance Company (N.Y. Life). After removal of the case to federal court and remand, the plaintiffs moved for class certification.[2] On November 18, 1996, the district court rendered an interlocutory judgment certifying a class composed of:
All persons who purchased whole or universal life policies from Defendant, N.Y. Life from January 1, 1982 through December 31, 1994, who opted out of the class action styled Wilson [sic], et al v. New York Life Insurance Company, et al; filed in the Supreme Court of New York, and who resided in Louisiana at the time they opted out....
Asserting that the interlocutory judgment would cause irreparable injury, N.Y. Life perfected this appeal. NY Life assigns the following errors:
1. The District Court erred in concluding that plaintiffs established by competent evidence that claims based on the sale of 1,849 different insurance policies through among 1,000 independent agents to individual policyowners share sufficient "common character" to support class adjudication, particularly in light of overwhelming individualized issues requiring proof from each separate class member as to the occurrence of oral representations, injury-in-fact, causation, reliance, comparative negligence and prescription.

*1170 2. The District Court erred in concluding that plaintiffs carried their burden of demonstrating that the claims of purported class representatives are sufficiently typical of the claims of the class to allow the representatives adequately to represent the class.
3. The District Court erred in concluding that plaintiffs carried their burden of establishing that a class action is the superior method of adjudicating plaintiffs' claims.
4. The District Court erred in concluding that plaintiffs established by competent evidence that members of the class are sufficiently numerous to render joinder impracticable.

STANDARD OF REVIEW
The appellees, Major Banks, Linda B. Joseph, Rosetta Nelson, Lloyd Price, Marilyn H. Ferrara, Lorraine LeBlanc, and Opal Michel, assert on appeal that our review of certification of a class action is subject to the manifest error rule. Conceding that several courts of appeal have followed this standard of review in class action certification contests, N.Y. Life points out that the Louisiana Supreme Court has not addressed the appropriate standard directly, and N.Y. Life seeks a de novo review.
We find that the proper standard of review is an abuse-of-discretion standard. We reach this conclusion after having the benefit of a thorough analysis of the Louisiana class action by the Louisiana Supreme Court in the recent case of Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929 (La.9/9/97), 703 So.2d 542. The court explained:
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. See Herbert B. Newberg & Alba Conte, 1 Newberg on Class Actions, § 1.01, p. 1-2, 1-3 (3d ed.1992). The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are "similarly situated," provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action.
* * * * * *
In 1961, Louisiana enacted Articles 591-597 of the Code of Civil Procedure, modeled after [the] original Federal Rule 23. However, the redactors of the Code of Civil Procedure rejected the hybrid and spurious class action models, authorizing only "true" class actions. La. C.C.P. art. 591, Comment (c). In 1966, Federal Rule 23 was amended, eliminating the three categories of class actions. Accordingly, the statutes governing class actions in Louisiana originated from the federal class action statute ... with the express legislative intent to recognize only "true" class actions under the original federal rule because of the availability of Louisiana's liberal joinder and intervention rules.
* * * * * *
Early Louisiana class action jurisprudence recognized the stringent common interest requirements of the original Rule 23 "true" class action, although the tests employed by the circuits differed. We first interpreted this provision in Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975). In Stevens, we held that the fact that different recoveries are sought, based upon the same factual transaction and same legal relationship, was not intended to defeat a class action.... In discussing the term "common character of the right sought to be enforced," we looked to the federal rules and noted that those rules were revised in 1966 because of the "difficulty of characterization required by this term of indefinite and imprecise meaning" and to describe "in more practical terms the occasions for maintaining class actions." Id. [at 150].
We thus adopted what we then called the "discretionary grant" given to trial *1171 judges in amended Federal Rule 23(b) as guidelines to be used by Louisiana courts in determining whether to allow a class action. Id.
* * * * * *
In sum, in Stevens, we substantially liberalized the availability of class actions under Louisiana law by giving judges wide discretion in determining whether to allow class actions using the factors listed in Rule 23(b) and the "fairness" factors enumerated in Stevens, rather than following the [Louisiana] legislative intent of allowing only "true" class actions. (Emphasis supplied.) (Footnotes omitted.)
703 So.2d at 544-48.
Considering the Louisiana Supreme Court's emphasis on the wide discretion placed in the trial court, we will examine the record before us to determine whether the trial court's certification of the class action was an abuse of discretion.

CERTIFICATION OF CLASS ACTION
The requirements for a class action, as set forth in LSA-C.C.P. arts. 591 and 592, are: (1) a class so numerous as to make it impractical for all of the persons to join or be joined as parties; (2) the joinder of parties who are members of the class and able to provide adequate representation for absent members; and (3) a "common character" between the rights of the representatives of the class and the absent members. Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049 (La. App. 1st Cir. 3/27/97); 691 So.2d 760, writ denied, 97-0800 & 97-0830 (La.4/8/97); 693 So.2d 147. Finding that the plaintiffs herein failed to establish the third requirement, common character, we hold the instant case is inappropriate for class action certification, and the trial court judge abused his discretion in so certifying it. As defendant asserts in its first assignment of error, the trial court erred in finding that a common character existed between the claims of the seven appellees and other persons who purchased 1,849 whole or universal life policies from 1,000 independent insurance agents. Indeed, the record reveals a lack of common character among the seven appellees.
Major Banks bought four whole life policies for himself and family members from an agent he met with individually following a group presentation. Mr. Banks bought the policies to accumulate cash values that later could be borrowed against to pay college expenses. He now complains that the illustrations the agent showed him prior to the purchase differed from the illustrations he later received with his policies. However, he did not complain when he received the policies in 1993. Mr. Banks also claims the agent orally assured him of cash values, but he concedes each policy did accumulate cash value, and he still has the original four policies plus another N.Y. Life policy.
Linda B. Joseph's claim in the instant suit is based on a policy on her own life and a policy on the life of her son Gregory. Although she had her policies replaced after the initial purchase, her only complaint herein is that she thought her policy would have a greater cash value by now. However, despite a loan she took out, Ms. Joseph has made a net gain in cash value.
Rosetta Nelson purchased employee whole life policies on the lives of her children in 1992, solely to obtain the death benefits. Later she discovered the policies might be used to provide retirement benefits in the future. Her only complaint is that she was not told of this additional benefit at the time of purchase. She still owns the N.Y. Life policies and does not plan to surrender them.
Lloyd Price bought a whole life policy in 1989 from a former acquaintance to supplement the retirement he would receive for his years of employment as a school counselor with a masters degree. He complains that his agent did not emphasize that the policy dividends are not guaranteed to be sufficient to pay premiums after eight years. When the instant action went to court for certification, the eight years had not lapsed and Mr. Price still had his policies.
Marilyn H. Ferrara bought a universal life policy in 1991 from an agent she had known for years. She chose a premium payment plan of $4,728 per year, for a total of $23,640. However, after paying only $21,000 in premiums, she surrendered the policy and received cash of $21,336. According to Ms. Ferrara's *1172 expert, her only complaint is that she may not be able to purchase other life insurance now.
Lorraine LeBlanc is a senior bank executive who claims she wanted to buy a policy but make only one premium payment. Her agent provided her with an illustration of such a purchase, but she admits the illustration also pointed out that dividends may not be sufficient always to pay premiums. She has been billed for premiums after the first year, but she has chosen to have them satisfied by deductions from the initial policy amount. Her complaint is that she will incur injury if she has to pay more premiums.
Opal Michel and her husband bought two whole life policies in 1987 from an agent she had known for more than 10 years. The agent showed them an illustration reflecting premiums of $7,300 yearly. Ms. Michel claims the agent told her the $7,300 figure marked "premiums" represented a tax-free annual income. Although both of the Michels' policies state that premiums are due for the remainder of the insured's life, they have never paid any out-of-pocket premium beyond the first premium. Their complaint is that the actual cash values of their policies now are not the same as those on the original illustrations. Ms. Michel's expert witness admitted that her situation is "unique."
To satisfy the requirement of common character, the mover must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Despite the obvious differences in the facts of the seven appellees' claims, the district court found 15 questions of law and fact that were "common" and predominated over individualized ones. An examination of only a few of the questions illustrates a lack of commonality.
First, "whether N.Y. Life had a duty of full disclosure to the policy holders and whether or not N.Y. Life fulfilled its duty to the policyholders." Our examination of the record made by the seven appellees convinces us that a factual determination would be required to conclude whether N.Y. Life fulfilled its duty of disclosure to one or more of the appellees. This issue is an individual one, not one common to all seven appellees, much less not common to the remaining hundreds of class members.
Second, "whether N.Y. Life, through its compensation structure, policies and procedures encouraged `churning' or internal replacements of policies." The only appellee whose claim involves a replacement policy is Ms. Joseph. It is unknown how many class members would be making a claim for "churning."
Third, "whether N.Y. Life failed to supervise and train its agents." The agents who sold policies to the seven appellees had varying years of experience. Their training by N.Y. Life, as well as the training of the other 993 agents will present individual, not common, questions of fact.
The above examples illustrate the fact that the common issues of liability of defendant to the individual class members do not predominate over the individual issues of causation and damages. Cf., Cotton v. Gaylord Container, 691 So.2d at 771. Our finding that common questions do not predominate in the instant case is consistent with the holding of the United State Supreme Court in Amchem Products, Inc. v. Windsor, ___ U.S. ___, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), wherein the court affirmed the Third Circuit's decertification of a nationwide asbestos case brought for settlement purposes because the class failed the "predominance" requirement and the "adequacy" requirement. In decertifying the class, the court noted that "disparate questions" undermined class certification; class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods of time. Id. Likewise, factors that complicate the causation inquiry in the instant case are that plaintiffs purchased different policies, for different purposes, from different agents, and with different results. Because the plaintiffs have failed to demonstrate a common character of their claims, we cannot say that certification of a class action would achieve "economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural *1173 fairness or bringing about other undesirable results." McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 616 (La.1984).
We find that the claims of the plaintiffs lack common character, making class certification an abuse of discretion; it is unnecessary for us to discuss the other errors urged by the appellant. We reverse the judgment of the trial court, assessing appellees with the costs of this appeal.
REVERSED.
FITZSIMMONS, J., concurs, and assigns additional reasons.
FITZSIMMONS, Judge, concurring, with additional reasons.
A class action in Louisiana requires that the "character of the right" to be enforced is "[c]ommon to all members of the class...." La. C.C.P. art. 591. This codal article mandates a greater relationship than a simple sharing of common questions of law and fact. Some common nucleus of operative facts within the totality of issues must exist. These common issues must dominate the individual issues. Fairness to the parties and judicial efficiency must also be considered before a class action can be properly certified. See Ford v. Murphy Oil U.S.A., Inc., 96-2913 pp. 9-11 (La.9/9/97), 703 So.2d 542.
The claims of the class are based on the sale of over 1800 individual policies, not directly by N.Y. Life, but by approximately 1000 insurance agents, to individual policyholders during a period of 13 years. The nature of the individual transactions over such a lengthy period of time does not meet the criteria for a class action in Louisiana. There is no common nucleus of operative facts here. The individual issues predominate over the common issues. The need for lengthy testimony by individual agents and policyholders on the issues of causation and liability would not foster fairness to the parties or judicial efficiency. This is especially true considering the outcome of the forerunner "settlement class" certified in another jurisdiction: the attorneys received 22 million dollars in fees; the litigants could negotiate a return to a "whole life policy" from their "universal life policy." Obviously, it is more economically prudent for N.Y. Life to agree to a settlement that would "sweeten the pot" for fees at the expense of the litigants, who were the true victims of any wrongful acts. Class actions are a good device to promote justice for the individual litigant who is too poor, or whose recovery would be too small, to tackle the corporate Goliath. See Amchem Products, Inc. v. Windsor, ___ U.S. ___, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997). It is not the concept that is flawed; it is the abuse of that concept that needs correction by the judiciary and the legislature.
For these reasons, I believe that the trial court abused its discretion in certifying the class. I respectfully concur.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The instant case is a mere tip of the proverbial iceberg, for it is subsequent to a nationwide class action against the same defendant, Willson v. New York Life Insurance Co., No. 94/127804, 1995 N.Y. Misc. LEXIS 652 (Nov. 8, 1995), aff'd, 228 A.D.2d 368, 644 N.Y.S.2d 617 (App.Div. 1996), cert. dismissed, ___ U.S. ___, 117 S.Ct. 2500, 138 L.Ed.2d 1006 (1997), filed in the state of New York. Thus, the class certified by the trial court in the instant case is defined as persons who opted out of the nationwide class action. Furthermore, there is evidence in the record of other suits in federal and state courts that are related to the claims being asserted herein.