717 So.2d 1226 (1998)
Dwain KIRKHAM, et al., Plaintiffs-Appellees,
v.
AMERICAN LIBERTY LIFE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 30830-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1998.
H. Russell Davis, Arcadia, Bryan Scofield, Lafayette, for Defendants-Appellants.
Robert W. Cook, Haughton, Gregory G. Mocek, Baton Rouge, for Plaintiffs-Appellees.
Before MARVIN, C.J., and STEWART and CARAWAY, JJ.
CARAWAY, Judge.
Defendant insurance company appeals a trial court order certifying the plaintiffs' claim for a class action suit on behalf of allegedly defrauded policyholders. With no showing of deficiencies in the written contract of insurance, we find predominant the individual issues of fact of the alleged misrepresentations in the sales of the policies over any issues common to the members of the proposed class. Accordingly, we vacate and set aside the judgment of the trial court granting class action certification and remand the case to the trial court for further proceedings consistent with the judgment herein.

Facts and Procedural History
The plaintiffs, Dwain Kirkham, Katherine C. Moore, Stephen R. Fricke and John Ed Quarles, brought this action against American Liberty Life Insurance Company ("ALLIC") [1] and W. Sherrill Little, the asserted general agent of ALLIC, alleging contractual fraud and breach of contract arising out of their purchase in the mid-1980's of "Insured Savings Plans" (ISP). Despite the label, the IPS contracts are participating whole life policies of insurance with the insured under each policy being a grandchild of each of the plaintiffs.

*1227 Allegations in the Petition

The plaintiffs allege that they understood that the purpose of the ISP was for retirement income and each invested $1800 per year. They understood the agreement to provide that, after six or seven years of annual premiums of $1800, the investment plan would be paid-up, and no more yearly payments would be due. They also allege that they understood that they might receive yearly dividends on the investment, and, as an additional benefit, they acquired a $30,000 face value life insurance policy on one of their grandchildren.
Each plaintiff paid his or her six or seven years of annual premiums and received some annual dividends. At the end of the initial six or seven year period, however, each was told that he or she would not be able to draw retirement income, and the plans would be lost if annual $1800 payments were discontinued. Fricke and Kirkham chose to cash in their policies at that time, while Moore and Quarles continued to make annual payments for three and four more years respectively before doing the same.
Each plaintiff alleges that ALLIC fraudulently misrepresented life insurance policies as "retirement plans" and "investments," told them that the ISP would be "paid up" in six or seven years, and that they could start drawing retirement income from their Insured Savings Plans after they were paid up in six or seven years. In addition to the allegations of fraud, the plaintiffs allege that ALLIC breached their contracts by requiring additional annual payments of $1800 beyond the six or seven years that they originally agreed to and in failing to pay the plaintiffs retirement income after six or seven years as promised.

The Class Action Suit
The plaintiffs subsequently dismissed their claim against Little, ostensibly because he was merely the agent of ALLIC, and also amended their petition to state a cause of action for a class action. They define the class as all individuals who purchased the ISP policies from ALLIC. They alleged that the questions of law and fact that are common to all members of the class. The common questions were alleged to include whether the defendants misrepresented the life insurance policies as insured savings plans, investments or retirement plans, and whether the defendants misrepresented that the purchasers of the ISP policies could start drawing retirement income after six or seven years.
The plaintiffs allege that the number of members of the class is too numerous to make it practical for them to be joined as parties, a fact that the defendant concedes.[2] Also, they claim that each individual plaintiff's claim is too small to be economically pursued in separate lawsuits.

Proceedings for Certification of the Class
The plaintiffs filed a motion for class certification arguing that the requirements for class certification under La. C.C.P. arts. 591 and 592 were satisfied. Plaintiffs' evidence consisted solely of the ISP contracts and a copy of an annual report of the defendant company.
Among the various exhibits attached to the opposition to the motion, defendants introduced copies of contract summaries signed by plaintiffs, Moore and Quarles. The summary briefly outlines the contract as follows:
This brochure is only a brief outline of the benefits and provisions of the policy, and is not your contract. The basic plan is a TWENTY YEAR PAYMENT LIFE INSURANCE CONTRACT. Features include a Guaranteed Additional Benefit always equal to not less than 33 1/3% of the annual premium, which is available on completion of the second annual premium and each year thereafter as each annual premium has been completed. The contract is also a participating plan which entitles the Owner of the contract to receive dividends, if any, beginning at the end of the second contract year and each year thereafter as long as the insured lives and as apportioned by the Board of Directors.
The insurance amount totals $30,000 and is the amount payable upon the death of the Insured, plus any paid up additions standing *1228 to the credit of the contract. In addition, the Owner will receive, in cash, any Guaranteed Additional Benefits, dividend and interest standing to the credit of this contract.
A short-term paid up option is available after premiums have been paid for six full years for the Face Amount of $30,000, provided there is no indebtedness against the contract and none of the Guaranteed Additional Benefits have been surrendered.
The contract features include the cash and/or loan values, the Guaranteed Additional Benefits and the dividends, if any, as apportioned by the Board of Directors of the Company. The second year accumulated cash values total $1014.30 and will purchase a paid up Whole Life Plan in the amount of $5940.00. The third year accumulated cash values total $2115.30 and will purchase a paid up participating Whole Life plan in the amount of $12,060.00. Future year accumulated cash values and paid up participating insurance increase substantially each year as set forth under the heading "Guaranteed Non-Forfeiture Values" on page 4. The accumulated cash values and paid up participating insurance amounts are in addition to any dividends available.
Little's relationship to ALLIC is not entirely clear from the record. Little became associated with ALLIC in 1983 and apparently sold the company on the concept of underwriting the ISP policy. Little entered into a contract with ISP to market the policies and train salesmen, including salesmen Hogan, Green and Lambert, who apparently were the salesmen involved with the plaintiffs. ALLIC claims it had no responsibility to select, train or instruct any salesmen. Part of Little's deposition is in the record, but his contract with ALLIC is absent from the record. We note that Little stated in his deposition that he was unaware of any other lawsuits involving ISP.
After receiving the above evidence without the plaintiffs offering their testimony or that of any other witness, the trial court granted the plaintiffs' motion for class certification. The court also overruled an exception of prescription filed by the defendants and ordered the plaintiffs to answer interrogatories requesting that they identify the written elements of the contract they allege were breached. The court also granted the plaintiffs' motion to compel responses to plaintiffs' interrogatories regarding the identity of individuals who purchased the same or similar policies.

Discussion
The requirements for a class action, as set forth in La. C.C.P. arts. 591 and 592,[3] are:
(1) a class so numerous as to make it impractical for all of the persons to join or be joined as parties.
(2) the joinder of parties who are members of the class are able to provide adequate representation for absent members; and
(3) a "common character" between the rights of the representatives of the class and the absent members.
Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975); see also, Ford v. Murphy Oil U.S.A., Inc., 96-C-2913, 96-C-2917, and 96-C-2929 (La.9/9/97), 703 So.2d 542. These requirements are commonly known as the "numerosity," "adequacy," and "commonality" requirements. See Ford, supra at note 9. There are additional considerations generally based in our notions of fairness and judicial economy. See generally, Ford, supra.
The burden of proof for class certification is on the party urging certification, and the jurisprudence has required a prima facie showing of the elements necessary for maintenance of the action. Carr v. Houma Redi-Mix Concrete, Inc., 96-1548 (La.App. 1st Cir.11/10/97), 705 So.2d 213. Conclusory allegations of a pleading are insufficient to establish the existence of a class. Brumfield v. Rollins Environmental Services (LA), Inc., 589 So.2d 35 (La.App. 1st Cir.1991).
Pretermitting the question of whether the numerosity and adequacy requirements have been met, our review of this record reveals that the plaintiffs have failed to introduce *1229 sufficient evidence of "commonality" in order to justify certification of a class action. "Commonality" requires a showing that the issues common to all members of the class predominate over individual issues, not simply that there is a sharing of common questions of law and fact. See Ford, supra; Banks v. New York Life Ins. Co., 97-0837 (La.App. 1st Cir. 12/29/97), 705 So.2d 1168.
The only element of common fact which the plaintiffs introduced into evidence in support of class certification was the ISP contracts or policies sold to the plaintiffs. Apart from the alleged misleading label, "Insured Savings Plan," and the alleged oral misrepresentations made to plaintiffs in the sale of these policies, these contracts are clearly contracts of insurance. The language of the contracts and in the contract summary quoted above expressly identifies the contracts as participating whole life policies.[4]
Plaintiffs argue that in addition to their claim of contractual fraud in the formation of the contract (i.e., fraud that would vitiate the plaintiffs' consent under La. C.C. art.1953), the written contract itself is misleading and was breached. Nevertheless, plaintiffs point to no specific provision that is ambiguous. Such ambiguity could allow ALLIC to sell the policies to plaintiffs and to the entire class of purchasers of the policy emphasizing one construction of the contract's benefits while later denying such benefits with a narrow construction of the same provision of the contract. Plaintiffs have not demonstrated any other flaw in the policy such as whether the policy is exorbitantly priced or based upon actuarial or economic assumptions which are contrary to other similar policies.
As to the heading on the contract, "Insured Savings Plan," whether such label combined with the alleged mischaracterization of the policies could fraudulently mislead each plaintiff is an individual issue of fact. However, the general rule regarding such label which would be applicable to the proposed class of policy purchasers in the absence of oral misrepresentations is that a contract's label must be considered with the contract as a whole. As we stated in Oaks v. Dupuy, 26,729 (La.App.2d Cir.4/5/95), 653 So.2d 165, 168: "[W]hile labels and headings of a contract may be pertinent in a given inquiry concerning coverage, any one aspect of an insurance policy cannot be construed separately and at the expense of disregarding the language of the policy as a whole."
In short, plaintiffs have not demonstrated that the written ISP contracts are anything but typical participating whole life policies of insurance. Unaided by any evidence comparing these subject contracts to other participating whole life contracts, we find the record lacks a showing that the written contracts contain a common contractual flaw or trap for the purchasers of this policy.
Plaintiffs' claim for a class of defrauded purchasers must therefore rest upon a common scheme of oral misrepresentation of these contracts. Yet, with an otherwise valid written contract, proof of the essential element of commonality by oral misrepresentations to the class is no easy task. As stated by the United States Fifth Circuit Court of Appeal in Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880, 882 (1973):
If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action. See Rule 23, Advisory Committee's Official Note, 39 F.R.D. 98, 107 (1966). Thus, courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action.
Apart from Little's deposition testimony indicating that the ISP policies were sold by salesmen which he trained, there is no evidence of a common pattern of fraudulent misrepresentation in the sales to the proposed class of policyholders. Three separate salesmen sold the policies to the plaintiffs. Their representations of the policy provisions and the plaintiffs' understandings of the written contract summaries and actual policies cannot be considered as forming a common *1230 nucleus of operative facts which would be similar for all members of the proposed class. Particularly in view of the written contract which, as discussed above, has not been shown to be misleading or ambiguous, the proposed class of policyholders can be considered as purchasers of participating whole life policies having relied primarily upon the terms of the contract as written. It therefore becomes an individual issue of fact whether each member of the proposed class ignored the written provisions of the contract because of false or misleading statements by the various salesmen. Such a highly individualized inquiry defeats a class action in this case.
Accordingly, we vacate and set aside the trial court's judgment granting the motion for class certification and dismiss without prejudice that part of the plaintiffs' amended petition alleging a class action. We remand the case to trial court for further proceedings in accordance with this opinion. Plaintiffs are cast for costs of this appeal.
JUDGMENT VACATED AND SET ASIDE; REMANDED.
NOTES
[1] ALLIC was a subsidiary of American Liberty Financial Corporation ("ALFC"), which merged with Citizens, Inc. ("Citizens"). The petition was later amended adding Citizens as a defendant.
[2] Defendant has conceded that there has been a sufficient number of these ISP policies sold such that joinder of all the policyholders would be impractical.
[3] La. C.C.P. arts. 591 and 592 were amended in 1997, and the former articles which were applicable at the time of this action are referenced herein.
[4] See, McKinzie & Johnson, Louisiana Civil Law Treatise, Insurance Law & Practice, § 252 (West 1986).