722 So.2d 990 (1998)
Major BANKS, Christopher Edwards, et al.
v.
NEW YORK LIFE INSURANCE CO., et al.
No. 98-C-0551.
Supreme Court of Louisiana.
December 7, 1998.
*991 C. Jerome D'Aquila, Charles S. Lambert, Jr., Jules B. LeBlanc, III, LeBlanc, Maples & Waddell, Baton Rouge; Randy J. Ungar, Robert M. Johnston, Adams & Johnston, New Orleans; Debra B. Hayes, Houston, TX, Charles B. Colvin, New Orleans, for Applicant.
Eugene R. Preaus, Maura Z. Pelleteri, Preaus, Roddy & Krebs, New Orleans; Phillip A. Wittman, Patrick W. Pendley, Plaquemine, Stephen H. Kupperman, Robert E. Harrington, New Orleans, for Respondent.
Clare F. Jupiter, New Orleans, Stephen J. Goodman, Phillip E. Stano, Washington, DC, for Amicus Curiae, American Council of Life Insurance.
JOHNSON, Justice.[*]
We granted Plaintiff's application for writ of certiorari to determine whether the court of appeal erred in reversing the district court's certification of Plaintiffs' class. See, Banks v. New York Life Ins. Co., 97-0837 (La. Ct.App. 1 Cir. 12/12/97), 705 So.2d 1168, 1173. After reviewing the record and the jurisprudence, we hold that this action is appropriate for class certification.

Facts
On September 8, 1994, Irene and Robert Gillette filed a complaint in the Supreme Court of New York[1], New York County, against New York Life Insurance Company and New York Life Insurance Annuity Corporation (hereinafter collectively referred to as "New York Life"). See, Gillette v. New York Life Ins. Co., No. 94/125903 (N.Y. Sup. Ct. filed Sept. 8.1984). The Gillettes filed the complaint on behalf of a putative[2] nationwide class of New York Life policy owners. In subsequent months, additional Plaintiffs, seeking to represent nationwide classes of New York life policy owners, filed three more lawsuits. See, Willson v. New York Life Ins. Co., No. 94/127804 (N.Y. Sup.Ct. filed Sept. 18, 1994); Villamil v. New York Life Ins. Co., No. 95/112433 (N.Y. Sup.Ct. filed May 16, 1995); Silva v. New York Life Ins. Co., 95/114850 (N.Y. Sup.Ct. filed June 13, 1995). These lawsuits were consolidated on June 29, 1995 under the caption Willson v. New York Life Ins. Co., No. 94/127804.
*992 The consolidated complaint contained two allegations. First, the complaint alleged that New York Life engaged in a nationwide scheme to induce class members to purchase life insurance policies based on false or misleading sales presentations, policy illustrations, and other marketing or sales materials. Second, the complaint alleged that New York Life injured class members through its dividend and interest rate practices and its false or misleading representations about those practices.
The Supreme Court of New York certified the class in its Final Order and Judgment approving the settlement of the class action. See, Willson v. New York Life Ins. Co., No. 94/127804, 1995 N.Y. Misc. LEXIS 652 (N.Y.Sup.Ct. Nov. 8, 1995). The court stated, "[g]iven the settlement ... the court finds that the requirements of CPLR 901 and 902[3] are satisfied by this settlement." Id.
In January 1996, Major Banks and Charles Edwards filed suit against New York Life in the Eighteenth Judicial District Court for the parish of Point Coupee. They filed suit for themselves individually and as representatives of all Louisiana residents who opted out of the settlement in Willson v. New York Life Ins. Co. In their petition, the class representatives charged New York Life with seven counts of wrongdoing. (R. at 24-29). Count I alleges that New York Life used unfair and deceptive practices to mislead class members about: (1) the benefits of their "premium offset proposal", (2) the fact that their life insurance policies were not savings or retirement plans, and (3) the amount of dividends each class member would realize by replacing their old policies with new policies. (R. at 24-25). Count II alleges that New York Life breached its duty of good faith and fair dealing by knowingly misrepresenting pertinent facts and insurance policy provisions. (R. at 25). Count III alleges that New York Life committed fraud by making material misrepresentations to class members with the intent of inducing them to invest in whole life or universal life insurance policies. (R. at 26). Count IV alleges that New York Life committed fraud in the inducement by materially misrepresenting the amount of dividends that class members would receive under their new life insurance policies. (R. at 26). Count V alleges that New York Life committed negligent misrepresentation and omission by failing to disclose the excessiveness of their administrative costs and by failing to disclose the real reasons for replacing the class members' old policies with new ones. (R. at 27). Count VI alleges that New York Life was negligent in (1) offering for sale and selling life insurance policies, (2) representing that the policies would provide benefits and services that they did not provide, (3) recommending life insurance policies with a "premium offset proposal," and (4) churning *993 insurance policies. (R. at 28). Lastly, Count VII alleges that New York Life breached its contract with class members by promising that the payment of premiums for a fixed period of years would be sufficient to carry the cost of the policies during the life of the class members, when in fact class members would be required to pay higher premiums in the future. (R. at 29).
Judge Marionneaux, of the Eighteenth Judicial District Court, conducted three days of evidentiary proceedings on Plaintiffs' motion for class certification. He granted Plaintiffs' motion for class certification on November 18, 1996. Judge Marionneaux certified a class composed of all persons who purchased whole or universal life insurance from New York Life from January 1, 1982 through December 31, 1994, who opted out of the settlement in Willson v. New York Life Ins. Co., No. 94/127804, 1995 N.Y. Misc. LEXIS 652 (N.Y.Sup.Ct. Nov. 8, 1995), and who resided in Louisiana at the time they opted out.
New York Life appealed the class certification asserting that the district court's interlocutory judgment would cause irreparable injury. On appeal, the first circuit considered the sole issue of whether the trial court erred in certifying the class. See, Banks v. New York Life Ins. Co., 97-0837, p. 3 (La. Ct.App. 1 Cir. 12/29/97), 705 So.2d 1168,1169. The first circuit found that the trial court abused its discretion by certifying the class. They held that the plaintiffs' claims lacked "common character" making class certification inappropriate.

Discussion
The class action is a nontraditional litigation procedure which permits a person to sue on behalf of a larger class of persons if certain requirements are met. The purpose of the class action is to adjudicate and obtain res judicata effect on all common issues applicable not only to persons who bring the action, but to all others who are similarly situated. Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La.9/9/97), 703 So.2d 542, 544.
Louisiana's class action statute is found in articles 591 through 597 of the Louisiana Code of Civil Procedure.[4] Under article 591(A), one or more representatives may sue on behalf of all others similarly situated if:
the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right to be sought to be enforced for or against the members of the class is: (1) common to all members of the class ...
La.Code Civ. Proc. Ann. art 591(A) (West 1960)[5]. In Stevens v. Board of Trustees, 309 So.2d 144 (La.1975) we recognized that the trial judge has vast discretion in determining whether to certify a class. In Stevens, we directed Louisiana trial judges to use Federal Rule of Civil Procedure 23(b) as a guide in determining whether to certify a class action. Stevens, 309 So.2d at 150. Rule 23(b) provides that a class may only be certified if the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Fed.R.Civ.P. 23(b)(3)[6]. The appellate courts will only decertify *994 a class where there is an abuse of the trial judge's vast discretion. Louisiana's class action statute is largely derived from Federal Rule of Civil Procedure 23. Therefore, reference to cases that interpret the federal class action statute is appropriate where there is a lack of Louisiana jurisprudence on a particular issue. See, Williams v. State, 350 So.2d 131, 133 (La.1977) (stating Louisiana class action statute was adapted largely from Federal Rule of Civil Procedure 23).
Plaintiffs in the instant case have met the requirements for class certification. Louisiana Code of Civil Procedure article 591 requires that the class be so numerous that joinder of all members would be impracticable. The potential class in this case consists of the owners of one thousand eight hundred and forty nine (1,849) life insurance policies. Clearly, a class of this size meets the numerosity requirement. In Thomas v. Charles Schwab & Co., 95-1279 (La. Ct.App. 3 Cir. 9/25/96), 683 So.2d 734, the third circuit court of appeal held that 114 potential class members met the numerosity requirement because joinder of 114 persons would not be conducive to judicial economy.
The appellate court was of the opinion that Plaintiffs failed to meet the "commonality" requirement of article 591. Article 591 requires that there be questions of law and fact common to the class. Plaintiffs allege that New York Life established a "premium offset proposal" where the accumulated dividends from the insurance policy were supposed to pay future premiums. (R. at 24). However, these dividends did not materialize and the class members' premiums actually increased. (R. at 22). Plaintiffs' also allege that New York Life improperly portrayed life insurance policies as investments, savings, or retirement plans. Lastly, Plaintiffs allege that New York Life replaced the existing policies of class members with new life insurance policies and that these replacements were funded using the existing cash value of the old policies. New York Life allegedly convinced class members to replace their old policies by overstating the dividends and other benefits to be realized from the new policies. (R. at 35).
Plaintiffs allege that the agents sold the new policies using false policy illustrations and other misleading marketing materials. See, (R. at 29). These sales materials were created by New York Life's home office and distributed to individual sales agents by New York Life. (R. at 1391). Defendants assert, and the appellate court found, that Plaintiffs' claims lack common character because the alleged false representations were made by individual insurance agents. However, Plaintiffs' claims still have common character because the corporate entity, New York Life, was allegedly aware that the materials used by its agents were false and misleading. Dr. Claude C. Lilly[7], an expert witness for the plaintiffs, testified at the class certification hearing that
New York Life knew its premium offset proposal was not sufficient to pay all future premiums and that the policyholder would eventually have to resume the payment of premiums. Dr. Lilly stated, "New York Life knew the rates would not hold up....[T]his Actuary indicates that they (New York Life) had done some sensitivity analysis on the product to determine what impact interest rate or variability would have.... It says "Unlike a policy that has truly become paid up, a future dividend scale decrease could force a policy ... to become premium paying again".... So *995 even at its inception, before they went forward with the product, they knew it was intra-sensitive.
(R. at 1051). Additionally, the agents who made the alleged false representations were trained by New York Life. Jay Feinberg, a Vice-President at New York Life, testified that New York Life generates the training materials to teach the agents how to sell the products. (R. at 1391).
Lastly, Mr. Feinberg testified that New York Life's home office determined the amount of dividends that would be paid on whole life policies. Therefore, they allegedly knew that the sales agents were overstating the dividends and other benefits to be realized from the new policies. The evidence adduced at the hearing clearly shows that the class members' claims of fraud are properly directed at defendant New York Life rather than at individual agents.
New York Life relies on Ford v. Murphy Oil U.S.A. in concluding that this class lacks "commonality." However, the instant case in distinguishable from Ford. In Ford, the plaintiffs brought an action against four petrochemical plants in St. Bernard Parish. The named defendants in Ford were Murphy Oil USA, Inc., Mobil Oil Corporation, ChemCat Corporation, and Calciner Industries, Inc. The plaintiffs were individuals and property owners who alleged physical, property and business losses as a result of the continuous emissions from the four separate plants. This court refused to certify the class in Ford stating that, "... claims arising from the torts of individual defendants are not appropriate for class action as there is no common cause as to those claims for all class members." With four different sources of emissions, it was impossible for one representative plaintiff to prove causation or liability issues for the class.
This court also refused to certify the class in Ford because the plaintiffs' theory of recovery raised an issue of first impression in Louisiana. Federal courts, and this court, will not certify a class where the theory of law involved in the case is novel and untested. The plaintiffs in Ford claimed that the "synergistic accumulation" of emissions from the four petrochemical plants caused injury to their persons, properties, and businesses. Ford, 703 So.2d at 543. This court found that the plaintiffs' "synergy" theory of recovery was "novel and untested" in Louisiana, making it difficult to determine whether common issues of law and fact would exist in such a case. Id. at 551. We stated in Ford that, "... the court must have experience with a tort in the form of several individual actions before it can certify issues in a way that preserves judicial resources." Id. The instant case can be further distinguished from Ford because the issues in the case sub judice are not novel theories of law, but are concepts that have been previously addressed by Louisiana courts. In Kirkham v. American Liberty Life Insurance Company, 30830 (La. Ct.App. 2 Cir. 8/19/98), 717 So.2d 1226, a class of policyholders brought an action against American Liberty Life Insurance Company (hereinafter "American Liberty"). They alleged that American Liberty breached its contract with its policyholders by promising that the payment of premiums for six or seven years would be sufficient to carry the cost of the policy during the life of the policyholders, when in fact, the policyholders would be required to continue paying premiums. Kirkham, 717 So.2d at 1227. The class also alleged that American Liberty fraudulently misrepresented whole life insurance policies as "retirement plans" or "investments." Id. The court of appeal decertified the class because the plaintiffs failed to introduce sufficient evidence of commonality. Id. at 1228-29. The court stated, "[w]ith no showing of deficiencies in the written contract of insurance, we find predominant the individual issues of fact [concerning] the alleged misrepresentations in the sales of the policies ..." Id. at 1226. In many respects, the facts and legal issues in Kirkham are similar to those in the instant case. Class members in both cases seek to recover damages for fraud and breach of contract in the sale of life insurance policies. Thus, because of Kirkham, the present case differs from Ford in that the issues in this case are neither novel nor untested in Louisiana.
It must be noted that Kirkham is distinguishable from the instant case in two *996 very important respects. First, the plaintiffs in Kirkham alleged that American Liberty committed fraud through the oral representations of the sales agents. The plaintiffs failed to show that the written insurance contracts contained a common contractual flaw or trap for the purchasers of the policies. Therefore, the plaintiffs' only basis of recovery required them to show a common scheme of oral misrepresentations. Plaintiffs in the instant case allege that New York Life committed fraud through its policy illustrations and other marketing materials. It is fairly well settled that a fraud case may be unsuited for class certification where the alleged misrepresentations were committed through oral statements. See, Crasto v. Estate of Kaskel, 63 F.R.D. 18, 22 (S.D.N.Y. 1974); Morris v. Burchard, 51 F.R.D. 530 (S.D.N.Y.1971). However, class certification is appropriate where common issues are found to predominate over individual issues and where the fraudulent misrepresentations appear in a standardized document or similarly common disclosure. See, Green v. Wolf Corp., 406 F.2d 291, 300-01 (2d Cir.1968) (holding that class was proper for certification and that common issues predominated over individual issues, where alleged misrepresentations were made in standard prospectus issued to class members); See also, Kent A. Lambert, Certification of a Class Action in Louisiana, 58 La. L.Rev. 1085,1103 (1998). The instant case, although factually similar to Kirkham, meets "the commonality" requirement for class certification because the alleged misrepresentations were made through New York Life's standardized marketing materials.
Secondly, Kirkham is distinguishable from the instant case because American Liberty was not responsible for the selection and training of salespersons nor was it responsible for the marketing of its insurance policies. Kirkham, 717 So.2d at 1228. The plaintiffs asserted that W. Sherrill Little was the general agent of American Liberty and that he contracted with them to market their insurance policies and train their salespersons. It is unclear whether the salespersons in Kirkham were independent contractors or direct employees of American Liberty. However, it is clear in the instant case that New York Life trained its sales agents. See, (R. at 1391). It is also clear that New York Life furnished its sales agents with marketing materials. Id.
The Louisiana Fourth Circuit Court of Appeal recently distinguished Ford and affirmed class certification in Andry v. Murphy Oil U.S.A., Inc., 97-0793 (La. Ct.App. 4 Cir. 4/1/98), 710 So.2d 1126. In Andry, several class action law suits were filed in relation to an explosion at an oil refinery. The trial court certified the class and the oil company appealed the certification. The oil company attempted to rely on Ford in arguing that the class should not have been certified. However, the court of appeal refused to apply Ford stating:
[t]he defendant's reliance on Ford is misplaced. The facts of the instant case are decidedly different from those in Ford. Unlike the instant case, Ford involved a class of plaintiffs suing four different and distinct entities claiming that the emissions and pollutants each entity released ... had a synergistic, damage-causing impact on the community.
Andry, 710 So.2d at 1131. The instant case is more similar to Andry than to Ford. In this case, New York Life is the only defendant. Plaintiffs allege that each improper action was caused solely by New York Life.
This court established in McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984) that situations involving multiple or long-term incidents do not preclude class certification. In McCastle, a class action was brought against the operator of a chemical waste disposal site. The Plaintiffs alleged that the activities of the defendant between 1980 and 1981 caused them to suffer physical injuries. In McCastle, each plaintiff would be required to individually show that defendant's conduct injured them in some way. However, this court held that the plaintiffs met the "commonality" requirement because they were all injured by the same conduct. The fact that this conduct occurred for a period of one year, rather than involving one incident, did not preclude this court from certifying the class. The instant case is similar to McCastle *997 as well. The class members in this case claim that they were all injured by the same conduct. That is, they all allege that their injuries were caused by the misrepresentations and fraudulent behavior of New York Life. Although they must prove individual injuries, they allege that their injuries were caused by the same "common" conduct. Therefore, Plaintiffs meet the commonality requirement of article 591(A)(2).

CONCLUSION
We conclude that this case is proper for class certification because common questions of law and fact predominate over individual issues of law and fact. Each class member stands in an identical position with respect to (1) whether New York Life fraudulently misrepresented the benefits of its "premium offset proposal", (2) whether New York Life improperly portrayed its life insurance policies as investment, savings, or retirements plans, and (3) whether New York Life's false and misleading marketing materials convinced class members to replace their old policies with new ones.
The action of the Court of Appeal, First Circuit, is hereby reversed. The judgement of the Eighteenth Judicial District Court, certifying the class, is hereby reinstated. We remand this case to the trial court for further proceedings.
REVERSED and REMANDED.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
MARCUS, J., dissents.
KNOLL and TRAYLOR, JJ., dissent for reasons assigned by MARCUS, J.
LEMMON, J., subcribing to the opinion and assigning additional concurring reasons.
Allegations of consumer fraud raise the common issue of law and fact in this case. The focus of the allegations of consumer fraud on the officers and executives of New York Life, rather than on the agents and employees, cause the questions of law and fact common to the members of the class to predominate over any questions affecting only individual members, as explained more fully by the majority opinion.
I write separately to point out that the class action is superior to other available methods of procedure because, in addition to the reasons stated in the majority opinion, approximately 1,500 Louisiana citizens who owned over 1,800 policies opted out of the national class action settlement, thereby signaling their intention to litigate their claims in a class action already filed in Louisiana.[1]See Fed.R.Civ.Proc. 23(b)(3)(b), which lists, as one of the factors bearing on the predominance issue, the extent and nature of any litigation concerning the controversy commenced by members of the class. Separate actions in Louisiana by the approximately 1,500 persons who opted out in New York would have to be consolidated, at least as to the common issues of law and fact discussed above and in the majority opinion. Moreover, the class representatives in the present action alleged that separate actions were not practical because many claims were too small for efficient litigation. See McCastle v. Rollins Environmental Serv. of La., Inc., 456 So.2d 612 (La.1984). The class action, therefore, is clearly the superior method of procedure.[2]
MARCUS, Justice, dissenting.
I disagree with the majority that plaintiff met the "commonality" requirement in this case. The class members were not injured by the same conduct. As the majority noted, the representatives here alleged seven counts of wrongdoing on the part of the sales agents of New York Life during a period of twelve years, including misrepresentation, failure to disclose information, and improper "churning" or internal replacement of policies. Therefore, I do not believe that this action is appropriate for class certification. Accordingly, I respectfully dissent.
NOTES
[*] Kimball, J., not on panel, recused. See Rule IV, Part 2, § 3. Victory, J., recused. Judge Marc T. Amy, Court of Appeal, Third Circuit, sitting by assignment in place of Justice Jeffrey P. Victory.
[1] The name "Supreme Court" is misleading. The Supreme Court is the court of original jurisdiction in the state of New York. See, N.Y. Const. art. VI, § 7.
[2] The term "putative" as used in class action procedure refers to the temporary status of an action which may be certified as a class action or a party who may be considered a member of the class once it is certified.
[3] CPLR 901 and 902 refers to the New York Civil Practice Law and Rules sections 901 and 902. Section 901 provides, "One or more members of a class may sue or be sued as representative parties on behalf of all if: (1) the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable; (2) there are questions of law or fact common to the class which predominate over any questions affecting only individual members; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; and (5) a class action is superior to other available methods for the fair and efficient adjudication of the controversy." N.Y. C.P.L.R. 901 (McKinney 1997).

Section 902 provides, " Within sixty days after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the plaintiff shall move for an order to determine whether it is to be so maintained. An order under this section may be conditional, and may be altered or amended before the decision on the merits on the court's own motion or on motion of the parties. The action may be maintained as a class action only if the court finds that the prerequisites under section 901 have been satisfied. Among the matters which the court shall consider in determining whether the action may proceed as a class action are: (1) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) The impracticability or inefficiency of prosecuting or defending separate actions; (3) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (4) The desirability or undesirability of concentrating the litigation of the claim in the particular forum; (5) The difficulties likely to be encountered in the management of a class action." N.Y. C.P.L.R. 902 (McKinney 1997).
[4] The term "Class Action Statute" is the generic term used throughout the Louisiana Code of Civil Procedure to refer to articles 591 through 597.
[5] Louisiana Code of Civil Procedure article 591(A) was amended by Acts 1997, No. 839, § 1. However, the amended article 591(A) does not apply to this action. The newly formulated article 591(A) only applies to actions filed on or after July 1, 1997. This instant action was filed in January 1996.
[6] Federal Rule of Civil Procedure 23 provides a list of several factors to be considered when deciding whether to certify a plaintiff class. Rule 23(b) provides in its entirety that a court should only certify a plaintiff class if it finds that:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
[7] Dr. Lilly is a chartered life insurance underwriter with a Ph.D. in Risk Management Insurance.
[1] The pending class action was dismissed after the present class action was filed.
[2] The reliance of the class members on the alleged misrepresentations is a secondary issue which may have to be tried separately along with the amount of individual damages.